Opinion
CHIN, J.
In this case, we again address the meaning of “actual injury” under the legal malpractice statute of limitations, Code of Civil Procedure section 340.6.[1] That statute commences the limitations period with the *743 attorney’s wrongful act or omission, or with the plaintiff’s actual or constructive discovery of the attorney’s error. However, several specified circumstances toll the prescriptive period, including that “The plaintiff has not sustained actual injury . . . .” (§ 340.6, subd. (a)(1).)
This court most recently considered the actual injury provision in Adams v. Paul (1995) 11 Cal.4th 583 [46 Cal.Rptr.2d 594, 904 P.2d 1205] (Adams). Adams reconfirmed the following: (1) determining actual injury is predominantly a factual inquiry; (2) actual injury may occur without any prior adjudication, judgment, or settlement; (3) nominal damages, speculative harm, and the mere threat of future harm are not actual injury; and (4) the relevant consideration is the fact of damage, not the amount. (Id. at pp. 585-586, 589, 591-592 (lead opn. of Arabian, J.); id. at pp. 595-596 (cone, opn. of Kennard, J.).) These propositions follow from Budd v. Nixen (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433] (Budd), which the Legislature intended to codify in section 340.6. (Laird v. Blacker (1992) 2 Cal.4th 606, 611 [7 Cal.Rptr.2d 550, 828 P.2d 691] (Laird).)
Ordinarily, the client already has suffered damage when it discovers the attorney’s error. (Budd, supra, 6 Cal.3d at p. 201.) In this case, the client alleged its attorneys failed to advise it about, or to assert a timely claim to, liability insurance benefits covering a third party’s suit against the client. The client acknowledged it discovered its attorneys’ alleged malpractice more than one year before it commenced this action. However, the client also contends it did not sustain actual injury until it later settled its action against its insurer for less than the full benefits it claimed.
We conclude that actual injury occurred before the client’s settlement with the insurer. In reaching this conclusion, we reaffirm the basic principles established in Budd and reiterated in Adams. Actual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions. (See Adams, supra, 11 Cal.4th at pp. 588-589 (lead opn. of Arabian, J,); Budd, supra, 6 Cal.3d at pp. 200-202.) Under the Legislature’s codification of Budd, section 340.6, subdivision (a)(1), will not toll the limitations period once the client can plead damages that could establish a cause of action for legal malpractice.
Here, the attorneys’ alleged neglect allowed the insurers to raise an objectively viable defense to coverage under the policies. The insurers’ assertion of this defense necessarily increased the client’s costs to litigate its coverage claims and reduced those claims’ settlement value. (Cf. Laird, *744 supra, 2 Cal.4th at p. 615.) Moreover, because of the attorneys’ alleged neglect, the client provided its own defense in the third party action for several years. Consequently, the client not only lost a primary benefit of liability insurance (see Montrose Chemical Corp. v. Superior Court (1993) 6 Cal.4th 287, 295-296 [24 Cal.Rptr.2d 467, 861 P.2d 1153]), it also lost profitable alternative uses for the substantial sums it paid in defense costs. These detrimental effects of the attorneys’ alleged neglect were not contingent on the outcome of the coverage action. Further, that action could not establish either a breach of a duty to provide timely insurance advice or a causal relationship between the alleged neglect and the claimed damages. Instead, the coverage action settlement simply reflected the client’s preexisting predicament—the attorneys’ alleged omissions had diminished the client’s right to its liability insurance benefits.
The loss or diminution of a right or remedy constitutes injury or damage. (Adams, supra, 11 Cal.4th at p. 590 (lead opn. of Arabian, J.).) Neither uncertainty of amount nor difficulty of proof renders that injury speculative or inchoate. (Ibid.) The coverage action settlement was not the first realization of injury from the alleged malpractice; the settlement simply resolved one alternative means to mitigate that injury. (See Foxborough v. Van Atta (1994) 26 Cal.App.4th 217, 226 [31 Cal.Rptr.2d 525].) Accordingly, the undisputed facts established that the client sustained actual injury more than one year before it commenced this suit.
Factual and Procedural Background
Jordache Enterprises, Inc., and Avi, Joe, and Ralph Nakash (the Nakashes), retained the law firm of Brobeck, Phleger & Harrison (Brobeck) in 1984 to defend them in Georges Marciano et al. v. Joe Nakash et al. (the Marciano action), a lawsuit filed in Los Angeles Superior Court.[2] The Marciano action involved several claims, including that Jordache was marketing “knockoffs” of Guess?, Inc., apparel. Two weeks after that action was filed in November 1984, Jordache contacted its insurance broker, Advocate Brokerage Corp. (Advocate Brokerage), and requested advice on insurance coverage for the action. Advocate Brokerage informed Jordache its insurance provided no coverage for that lawsuit. Neither Jordache nor Advocate Brokerage gave Jordache’s insurers notice of the Marciano action.
Jordache did not request from Brobeck, and Brobeck did not offer, any advice concerning insurance coverage for the Marciano action.. Brobeck did *745 not ask about Jordache’s insurance or otherwise investigate whether any potential for coverage might trigger an insurer’s duty to defend the Marciano action.
In April 1987, Jones, Day, Reavis & Pogue replaced Brobeck as Jordache’s counsel of record in the Marciano action. Its new counsel advised Jordache there was potential insurance coverage for that action. In August 1987, Jordache instructed its counsel to demand that its insurers defend the Marciano action and two related cases then pending in Delaware and Hong Kong. Counsel sent copies of the fifth amended complaint in the Marciano action and the Delaware and Hong Kong complaints to Advocate Brokerage and asked it to submit the claims to Jordache’s insurers.
In December 1987, Jordache retained the law firm of Conkle & Olesten and gave it “exclusive authority” to make and prosecute claims concerning the Marciano action against Jordache’s liability insurers. By December 1987, Jordache had discovered Brobeck’s alleged negligence in not notifying or advising Jordache to notify its insurers of the Marciano action.
At the outset, Jordache and its new counsel discussed the predicament in which Jordache found itself because of Brobeck’s omissions. A “big issue” in these early discussions was the probability that the insurers would raise a late notice defense to Jordache’s coverage claim. For instance, one of Jordache’s liability insurance policies required Jordache to notify the insurer “whenever [Jordache] has information from which [it] may reasonably conclude that an Occurrence covered . . . involved injuries or damages which, in the event that [Jordache] should be held liable is likely to involve [the] policy . . . .”
More than three years after the Marciano action begin, Conkle & Olesten formally tendered defense of the action directly to Jordache’s liability insurance carriers. Soon after, in February 1988, Jordache sued its insurers, alleging they failed to provide a defense and wrongfully refused to acknowledge coverage. Jordache sought reimbursement for $30 million it had allegedly paid for attorney fees and costs in the Marciano action. Jordache also asserted the Nakashes and their companies lost millions of dollars in profits because the funds spent on legal fees would otherwise have been used for profitable investments.
One of the insurers Jordache sued was National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union). Its answer to the complaint and its November 1988 interrogatory answers denied any liability, alleging that Jordache’s untimely notice of the Marciano action had caused it substantial prejudice.
*746 In May 1990, the Marciano action settled. Jordache and National Union then filed cross-motions for summary adjudication of issues in their insurance coverage litigation. The trial court’s July 26, 1990, ruling on those motions found: (1) the Marciano action presented potential liability within National Union’s advertising liability coverage and thus triggered the insurer’s duty to defend; (2) Jordache did not notify National Union of the claim until three years after the Marciano action began, and eight months after the fifth amended complaint was filed, which was untimely notice as a matter of law; and (3) whether the late notice substantially prejudiced National Union was a triable issue of material fact. On July 31, 1990, Jordache settled its insurance coverage suits for $12.5 million.
Jordache and Brobeck agreed to toll the statute of limitations from August 15, 1990, to February 15, 1991, for any claims Jordache had against Brobeck. As a result, Jordache’s legal malpractice action against Brobeck, filed February 14, 1991, was deemed to have been filed on August 15, 1990. Jordache’s malpractice complaint alleged only omissions by Brobeck: (1) failing to investigate—or to advise Jordache to investigate—whether Jordache’s insurance might cover the Marciano action, (2) failing to recognize that Jordache’s liability insurance potentially covered the Marciano action, and (3) failing to notify—or to advise Jordache to notify—the liability insurers whose policies potentially covered the Marciano action.
Brobeck moved for summary judgment, asserting that section 340.6 barred Jordache’s claims because, no later than 1987, Jordache discovered the alleged omissions and sustained actual injury in the form of (1) lost profits from business investment monies diverted to defense costs in the Marciano action, and (2) forgone insurance benefits for defense costs incurred before Jordache tendered defense of the Marciano action. Jordache agreed that it discovered Brobeck’s alleged omissions by December 1987. Jordache opposed the motion on the ground that it did not sustain actual injury until it settled with National Union for less than the full amount of its claim.[3]
The trial court granted summary judgment. It found that more than one year before Jordache’s suit was deemed filed, Jordache sustained actual *747 injury within the meaning of section 340.6 because it claimed it lost millions of dollars of business profits before it tendered the Marciano action’s defense to its insurers. The court stated this injury was an immediate deprivation of property and was not contingent on the July 26, 1990, ruling in the National Union action.
The Court of Appeal reversed, holding that Jordache suffered no actual injury within the meaning of section 340.6 until it settled the National Union action in July 1990. The Court of Appeal concluded that whether Brobeck’s omissions impaired Jordache’s interests in the benefits of its insurance policies was contingent on the outcome of the National Union action. The court said the resolution of that action “necessarily included a determination regarding the effect of Brobeck’s purported malpractice. Thus, the . causal connection between Brobeck’s negligent advice and Jordache’s damages, both components of which are necessary to give rise to actual injury, was established when Jordache settled the insurance lawsuit after the trial court found both the potential for coverage and late notice of the Marciano claims.”[4]
We granted Brobeck’s petition for review and limited the issue “to whether [Jordache’s] ‘actual injury’ (. . . § 340.6, subd (a)(1)) from [Brobeck’s] allegedly negligent failure to tender defense of a third party action to [Jordache’s] insurers occurred upon settlement of the subsequent coverage actions against the insurers.”
Discussion
This case presents a relatively narrow legal question: When does a former client—having discovered the facts of its attorneys’ malpractice— sustain actual injury so as to require commencement of an action against the attorneys within one year?[5] Superficial differences in answering this question in different cases may be unavoidable, given the vast range of circumstances legal malpractice claims can involve. Clients employ attorneys throughout the spectrum of personal and commercial affairs, and attorney errors do not always produce simple consequences. Nevertheless, understanding the function of the actual injury provision facilitates its consistent application to the specific factual circumstances of the particular case.
*748 Brobeck and Jordache disagree on Budd’s significance in analyzing actual injury. In particular, Jordache disputes that section 340.6 codifies Budd. A recapitulation of Budd’s role thus is an appropriate starting point.

Budd and Actual Injury

Section 340.6 is not simply a mechanical transcription of the holdings in Neel v. Magana, Olney, Levy, Cathcart & Gelfand (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421] (Neel) and Budd; the Legislature plainly intended to address additional concerns when it established a separate statute of limitations for legal malpractice actions. Unlike section 340.6, Budd does not use the phrase “actual injury,” referring instead to “damage,” “actual loss or damage,” “appreciable harm,” and “appreciable and actual harm.” (Budd, supra, 6 Cal.3d at pp. 198, 200-201.) However, the pertinent legislative history shows how the actual injury tolling provision derived from the holding in Budd.[6]
The Legislature considered section 340.6 as Assembly Bill No. 298 (1977-1978 Reg. Sess.). When the bill went to the Assembly Committee on the Judiciary, it contained a tolling provision for the time the plaintiff had not sustained “significant injury.” (Digest, supra, pp. 1, 4.) The Digest noted that the committee members had been “provided the detailed analysis of recommended legal malpractice statutes of limitations recently published in the State Bar Journal.” (Digest, supra, p. 3.) That analysis proposed to toll the statute until “significant” injury occurred based on Budd’s holding that any “appreciable and actual harm” sufficed for a cause of action’s accrual and commencement of the limitations period. (Budd, supra, 6 Cal.3d at p. 201; see Mallen, Panacea or Pandora’s Box? A Statute of Limitations for Lawyers (1977) 52 State Bar J. 22, 24; 2 Mallen & Smith, Legal Malpractice (4th ed. 1996) Statutes of Limitations, § 21.11, p. 784.)
*749 The Digest referred to Neel, supra, 6 Cal.3d 176, and Budd, supra, 6 Cal.3d 195, when it stated: “In two landmark 1971 decisions, the California Supreme Court substantially modified [the prior] rule to provide that in an action for legal malpractice, the cause of action does not accrue until the plaintiff knows or should know the material facts in issue for a legal malpractice action and the plaintiff sustains actual damage.” (Digest, supra, p. 2.) The Digest again alluded to Budd in discussing commencement of the limitations period: “The court has recognized that only when the negligent act results in an actual injury will an action for legal malpractice exist. Assembly Bill 298 provides that the statute of limitations is tolled until the plaintiff sustains significant injury.” (Digest, supra, p. 4.) The committee amended the provision to specify “actual injury” rather than “significant injury.” (Id., at p. 1.)
Therefore, as we have noted, the Legislature’s choice of “actual injury” for the tolling provision plainly was intended to invoke Budd. (See, e.g., Adams, supra, 11 Cal.4th at p. 588 (lead opn. of Arabian, 1); Laird, supra, 2 Cal.4th at p. 612.) The import of the change from “significant” to “actual” injury also is reasonably clear: The Legislature used the term “actual” to focus inquiry on the fact of damage; it omitted other qualifiers, to preclude digressions into whether various quantities of damage trigger the limitations period. (See Laird, supra, 2 Cal.4th at p. 613; Foxborough v. Van Atta, supra, 26 Cal.App.4th at p. 226; see also 2 Mallen & Smith, Legal Malpractice, supra, Statutes of Limitations, § 21.11, pp. 784-785.)
Budd’s basic premise was that a plaintiff could not assert a cause of action for legal malpractice, and hence the limitations period should not commence, until the plaintiff sustained some damage occasioned by the attorney’s negligence. (Budd, supra, 6 Cal.3d at pp. 200-201.) Budd recognized that “actual loss or damage resulting from the professional’s negligence” was an essential element of a cause of action in tort for professional negligence. (Id. at p. 200.) Thus, Budd held that the statute of limitations began to run when the plaintiff sustained loss or damage from the attorney’s negligence that allowed the plaintiff to assert a malpractice cause of action. (Id. at pp. 200-201.) In section 340.6’s terms, the one-year limitations period that commences when the plaintiff actually or constructively discovers the attorney’s wrongful act or omission is no longer tolled after the plaintiff sustains actual injury, i.e., when the plaintiff can plead a legal malpractice cause of action.
Budd remains instructive on the test for actual injury: “If the allegedly negligent conduct does not cause damage, it generates no cause of action in *750 tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.] Hence, until the client suffers appreciable harm as a consequence of [the] attorney’s negligence, the client cannot establish a cause of action for malpractice.” (Budd, supra, 6 Cal.3d at p. 200, fn. omitted.) “The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by [the] attorney’s negligence. [Citations.] Any appreciable and actual harm flowing from the attorney’s negligent conduct establishes a cause of action upon which the client may sue.” (Id. at p. 201, italics added.)
Subsequent decisions have made explicit what Budd implied. Thus, Davies v. Krasna (1975) 14 Cal.3d 502, 514 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807] held that the existence of appreciable actual injury does not depend on the plaintiff’s ability to attribute a quantifiable sum of money to consequential damages. Similarly, Laird rejected the claims that actual injury should be defined by a monetary amount and that the limitations period should be tolled if the injury is, in some way, remediable. (Laird, supra, 2 Cal.4th at pp. 611, 614-617; see Baltins v. James (1995) 36 Cal.App.4th 1193, 1203 [42 Cal.Rptr.2d 896]; Foxborough v. Van Atta, supra, 26 Cal.App.4th at pp. 226-227.) Adams recognized that actual injury may consist of impairment or diminution, as well as the total loss or extinction, of a right or remedy. (Adams, supra, 11 Cal.4th at pp. 589-590, 591, fn. 5 (lead opn. of Arabian, J.); id. at p. 597 (cone. opn. of Kennard, J.); see Foxborough v. Van Atta, supra, 26 Cal.App.4th at p. 227 [“[W]hen malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred.”]; 2 Mallen & Smith, Legal Malpractice, supra, Statutes of Limitations, § 21.11, at p. 782.)
Budd’s discussion of the possible damages the plaintiff there incurred further illuminates the nature of actual injury. In Budd, the defendant attorney failed to allege a crucial defense in a third party’s suit against the plaintiff and the corporation of which he was president. (Budd, supra, 6 Cal.3d at p. 198.) New counsel tried unsuccessfully to rectify the defendant’s omission; the trial court entered judgment against the plaintiff personally. (Id. at pp. 198-199.) Budd said the facts presented after remand could demonstrate the plaintiff suffered damage when he paid the defendant attorney’s fees, if the attorney’s negligence caused these payments to exceed the value of the legal services. (Id. at pp. 201-202.) The court also observed *751 that the plaintiff might have had a viable tort damage claim for the fees paid to the second attorney to untangle the defendant’s error. {Id. at p. 202.) In characterizing the latter fees as a type of damage that allows a malpractice cause of action to accrue, Budd simply recognized the established rule that attorney fees incurred as a direct result of another’s tort are recoverable damages. (See Brandt v. Superior Court (1985) 37 Cal.3d 813, 817-818 [210 Cal.Rptr. 211, 693 P.2d 796]; Prentice vi North Amer. Title Guar. Corp. (1963) 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645]; cf. 2 Mallen & Smith, Legal Malpractice, supra, Damages, § 19.10, atpp. 610-612 [attorney fees as mitigation expenses recoverable in malpractice action].)[7]
The “actual injury” provision in section 340.6, subdivision (a)(1), effectively continues the accrual rule Budd established. Under Budd, the cause of action could not accrue until the plaintiff suffered actual loss or damage resulting from the allegedly negligent conduct. {Budd, supra, 6 Cal.3d at pp. 200-201.) After sustaining damages compensable in a negligence action, the plaintiff could establish a cause of action for professional negligence, and the limitations period commenced. {Ibid.) Under section 340.6, the one-year limitations period commences when the plaintiff actually or constructively discovers the facts of the wrongful act or omission, but the period is tolled until the plaintiff sustains actual injury. That is to say, the statute of limitations will not run during the time the plaintiff cannot bring a cause of action for damages from professional negligence.
The test for actual injury under section 340.6, therefore, is whether the plaintiff has sustained any damages compensable in an action, other than one for actual fraud, against an attorney for a wrongful act or omission arising in the performance of professional services. This interpretation is consistent with the plain language of the statute and the Legislature’s manifest intent in enacting section 340.6. As the lead and concurring opinions in Adams emphasized, determining when actual injury occurred is predominantly a factual inquiry. {Adams, supra, 11 Cal.4th at p. 588 (lead opn. of Arabian, J.); id. at p. 595 (cone. opn. of Kennard, J.).) When the material facts are undisputed, the trial court can resolve the matter as a question of law in conformity with summary judgment principles. {Id. át pp. 592 (lead opn. of Arabian, J.).)

*752
Actual Injury and Brobeck’s Alleged Negligence

The Court of Appeal suggested that actual injury requires an established causal nexus between the attorney’s negligent acts and an invasion of the client’s legally protected interests. The court also suggested that establishing this nexus often will turn on the outcome of related litigation, and, therefore, actual injury does not occur until related litigation concludes.
However, this approach departs from Budd and Adams. Actual injury refers only to the legally cognizable damage necessary to assert the cause of action. There is no requirement that an adjudication or settlement must first confirm a causal nexus between the attorney’s error and the asserted injury. The determination of actual injury requires only a factual analysis of the claimed error and its consequences. The inquiry necessarily is more qualitative than quantitative because the fact of damage, rather than the amount, is the critical factor. (Adams, supra, 11 Cal.4th at p. 589 (lead opn. of Arabian, J.); id. at p. 595 (cone. opn. of Kennard, J.); Laird, supra, 2 Cal.4th at pp. 612, 613; Budd, supra, 6 Cal.3d at pp. 200-201.)
Of course, nominal damages will not end the tolling of section 340.6’s limitations period. Thus, there is no basis for Jordache’s expressed concern that the statutory period will run once the plaintiff sustains the “first dollar” of injury. Instead, the inquiry concerns whether “events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages.” (Davies v. Krasna, supra, 14 Cal.3d at p. 513.) However, once the plaintiff suffers actual harm, neither difficulty in proving damages nor uncertainty as to their amount tolls the limitations period. (Id. at p. 514.)
Here, the undisputed facts established that Jordache sustained actual injury as a result of Brobeck’s alleged neglect no later than December 1987. By then, Jordache had lost millions of dollars—both in unpaid insurance benefits for defense costs in the Marciano action and in lost profits from diversion of investment funds to pay these defense costs. As Brobeck asserts, these damages were sufficiently manifest, nonspeculative, and mature that Jordache tried to recover them as damages in its insurance coverage suits.
Brobeck also asserts that the years of delay in tendering defense of the Marciano action to the insurers gave them a defense to payment they would not have had if the tender had been made as Jordache’s insurance policies required. Consequently, Brobeck’s alleged neglect diminished Jordache’s insurance contract rights. Because the insurers could and National Union did *753 assert an objectively viable “late notice” defense to Jordache’s claims, Jordache necessarily incurred additional litigation costs to meet that defense, and the settlement value of its claims decreased. (Cf. Laird, supra, 2 Cal.4th at p. 615.)
Ultimately, however, Jordache’s insurance coverage litigation could not determine the existence or effect of Brobeck’s alleged negligence. As Brobeck notes, the alleged failure to advise Jordache on insurance matters was not at issue in the coverage lawsuits. Thus, the resolution of that litigation would not determine whether Brobeck breached its duty to Jordache. For the same reason, the coverage litigation could not determine the consequences resulting from Brobeck’s alleged breach of duty. The coverage litigation’s resolution was relevant to Brobeck’s alleged negligence only insofar as it potentially affected the amount of damages Jordache might recover from Brobeck.
The Court of Appeal nonetheless stated that any injury Jordache sustained was only speculative until settlement of the coverage actions. The court reasoned that if Jordache had prevailed on its claim that notice to Advocate Brokerage was timely notice to the insurers, then Brobeck’s omissions would have caused no injury. Similarly, the court said that if Jordache’s policies were found to provide no potential coverage for the Marciano action, then Brobeck’s failure to advise Jordache to tender the defense would not have affected Jordache’s policy rights.
However, the result of Jordache’s coverage litigation could only confirm, but not create, Jordache’s actual injuries from the late tender of the Marciano action’s defense. Jordache’s right to an insurer-funded defense existed or not when that action first embroiled Jordache. The right to that insurance benefit, the impairment of that right, and Jordache’s expenditures while that right was unavailable, did not arise for the first time when Jordache settled with the insurers. As Brobeck suggests, a finding in Jordache’s coverage litigation that its policies provided no coverage could have given Brobeck at best a defense to some of Jordache’s damage claims. Similarly, a determination that Jordache’s contacts with Advocate Brokerage satisfied the policies’ notice requirements would not preclude Brobeck’s potential liability for not advising a more direct, certain, and timely method of obtaining an insurer-funded defense of the Marciano action. To paraphrase an observation from Laird: Although the outcome of the coverage litigation may have reduced Jordache’s damages, that action could neither necessarily exonerate Brobeck, nor extinguish Jordache’s action against Brobeck for failure to render timely advice on insurance issues. {Laird, supra, 2 Cal.4th at p. 614.) *754 Jordache’s injuries were not speculative or contingent until the trial court ruled the insurers had a duty to defend Jordache and Jordache settled its coverage claims. As Adams reiterated, speculative and contingent injuries are those that do not yet exist, as when an attorney’s error creates only a potential for harm in the future. {Adams, supra, 11 Cal.4th at pp. 589-590 (lead opn. of Arabian, J.); id. at pp. 597-598 (cone. opn. of Kennard, J.).) An existing injury is not contingent or speculative simply because future events may affect its permanency or the amount of monetary damages eventually incurred. {Foxborough v. Van Atta, supra, 26 Cal.App.4th at p. 227; see Saftne v. Sinnott (1993) 15 Cal.App.4th 614, 617-618 [19 Cal.Rptr.2d 52]; cf. Laird, supra, 2 Cal.4th at pp. 614-615.). Thus, we must distinguish between an actual, existing injury that might be remedied or reduced in the future, and a speculative or contingent injury that might or might not arise in the future. Here, Jordache alleged it expended millions of dollars to defend the Marciano action and lost millions of dollars from profitable investments forgone to pay defense costs. These actual, existing injuries, and the diminution of Jordache’s insurance policy rights the late tender occasioned, did not first arise when the coverage litigation was settled.
The circumstances of this case highlight the problems, and ultimate futility, of attempting to formulate categorical rules to determine actual injury for broad classes of legal malpractice claims. The Court of Appeal believed the resolution of Jordache’s coverage litigation was necessary to determine the effect of Brobeck’s alleged malpractice and to establish a causal connection between its omissions and Jordache’s damages. However, the settlement terminated the coverage litigation without determining issues pertinent to the malpractice claims. In any event, the coverage litigation could not have determined the cause of Jordache’s long delay in formally tendering defense of the Marciano action directly to its insurers. Therefore, that litigation could not establish either the existence of Brobeck’s alleged negligence or any causal connection between that neglect and Jordache’s damages.
Two obstacles preclude any attempt to create a general rule that tolls the limitations period until a related lawsuit establishes a causal connection between attorney error and resulting injury. First, such a rule would have no basis in the language of the statute involved or the legislative intent. Second, such a rule often would be frustrated by the exigencies of litigation. Most civil lawsuits for damages settle,[8] determining only the allocation of money necessary to end the litigation. Many different factors can influence the *755 decision to settle a suit; a related malpractice claim may or may not be decisive. Given the prevalence of settlements, litigation related to a legal malpractice claim is unlikely to conclude with a judicial determination establishing either the attorney’s error or a causal nexus between damages and the error. Moreover, there is no guarantee a settlement will determine any issue connected with attorney error, except perhaps the extent to which damages have been mitigated. In any event, a settlement that purports to do more could not determine the issues in a legal malpractice action against attorneys the settlement does not bind.
As Adams established, the determination of actual injury does not necessarily require some form of adjudication, judgment, or settlement. {Adams, supra, 11 Cal.4th at p. 591 (lead opn. of Arabian, J.); id. at p. 595 (cone. opn. of Kennard, J.).) The allegations of attorney error in a particular case’s factual setting may lead to a finding that actionable injury occurred only when a related action was adjudicated. (See, e.g., Baltins v. James, supra, 36 Cal.App.4th at p. 1208.) In other instances, a collateral suit itself may be a consequence of the alleged malpractice or simply an alternative means of obtaining relief. (See, e.g., Sindell v. Gibson, Dunn & Crutcher (1997) 54 Cal.App.4th 1457, 1470 [63 Cal.Rptr.2d 594]; Foxborough v. Van Atta, supra, 26 Cal.App.4th at p. 226.)
As a party to related litigation, however, a prospective malpractice plaintiff could influence the course of the collateral suit and the timing of its conclusion. A rule that invariably tolls the limitations period if collateral litigation might affect damages conflicts with section 340.6’s terms and is inimical to its purposes. Laird’s comments about tolling the limitations statute pending appeal apply as well to the Court of Appeal’s tolling rule in this case. (See Laird, supra, 2 Cal.4th at p. 618.) Delaying recognition of actual injury until related litigation concludes would give a client who has sustained actionable damages, and who is aware of the attorney’s error, unilateral control over the limitations period. This result would undermine the Legislature’s purpose in enacting a statute of limitations. {Ibid.)

Jordache’s Public Policy Arguments

Limitations statutes are intended to enable defendants to marshal evidence while memories and facts are fresh and to provide defendants with repose for past acts. (See Romano v. Rockwell Intemat., Inc. (1996) 14 Cal.4th 479, 488 [59 Cal.Rptr.2d 20, 926 P.2d 1114]; Jolly v. Eli Lilly & Co. (1988) 44 Cal.3d 1103, 1111-1112 [245 Cal.Rptr. 658, 751 P.2d 923]; Gutierrez v. Mofid (1985) 39 Cal.3d 892, 898-899 [218 Cal.Rptr. 313, 705 *756 P.2d 886].) As Laird observed, the legislative goal underlying limitations statutes is to require diligent prosecution of known claims so that legal affairs can have their necessary finality and predictability and so that claims can be resolved while evidence remains reasonably available and fresh. {Laird, supra, 2 Cal.4th at pp. 614, 618.) As Laird also stated, a plaintiff’s unilateral control of the statute’s commencement can undermine these legislative goals. {Id. at p. 618.)
Jordache acknowledges these purposes but argues for a countervailing policy, citing decisions that deem limitations statutes “ ‘technical defenses’ ” that are strictly construed to avoid forfeiture of a plaintiff’s rights. {Steketee v. Lintz, Williams & Rothberg (1985) 38 Cal.3d 46, 56 [210 Cal.Rptr. 781, 694 P.2d 1153]; see, e.g., Bollinger v. National Fire Ins. Co. (1944) 25 Cal.2d 399, 411 [154 P.2d 399].) However, this interpretive rule is subject to two caveats when applied to section 340.6.
First, as the lead opinion in Adams stated: “[Statutes of repose are in fact favored in the law, ‘designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.’ [Citation.]” {Adams, supra, 11 Cal.4th at p. 592 (lead opn. of Arabian, J.).)
Second, section 340.6 reflects the balance the Legislature struck between a plaintiff’s interest in pursuing a meritorious claim and the public policy interests in prompt assertion of known claims. The courts may not shift that balance by devising expedients that extend or toll the limitations period. The Legislature expressly disallowed tolling under any circumstances not stated in the statute. {Laird, supra, 2 Cal.4th at p. 61.8.) In any event, as the lead opinion in Adams suggested, the discovery and continuous representation provisions of section 340.6 help protect legal malpractice plaintiffs from unknowing or inadvertent forfeiture of meritorious claims. (See Adams, supra, 11 Cal.4th at p. 592.) Consequently, to achieve fairness to plaintiffs and to avoid forfeiture of just claims, we need not artificially interpret actual injury to extend the time to sue after plaintiffs discover their attorneys’ negligence and have cognizable damage claims.
Jordache also suggests that statutes of limitation are designed to discourage prosecution of unnecessary lawsuits and promote judicial *757 economy. Here, Jordache draws on excerpts from Romano v. Rockwell Internal, Inc., supra, 14 Cal.4th at pages 494-495, 500. Romano concerned the commencement of the limitations period in a wrongful termination case alleging contract and tort claims, as well as violations of statutes making certain employee discharges unlawful employment practices. {Id. at pp. 483-484.) We held the limitations period began when the employment actually terminated, not when the employer gave notice of its intent to terminate. {Id. at p. 484.) We also discussed some of the subsidiary benefits of that rule, including not promoting premature and potentially destructive claims and the relative simplicity of determining the date of actual termination. {Id. at pp. 494-495.)
From Romano’s discussion Jordache attempts to glean policy rules generally applicable to all statutes of limitations and particularly applicable to section 340.6. Thus, Jordache reasons that the interests of judicial economy require parties to be able to determine promptly and accurately the date a limitations period commences and the viability of a limitations defense. Jordache also asserts judicial economy would be served if the plaintiff did not have to sue while a chance remained that the wrongful act might leave no damage. Lastly, Jordache contends the statutory period should not run when it is inconvénient or difficult for a plaintiff to sue, as when related litigation remains pending.
Whatever the merits of these policies in other settings, the legislative scheme embodied in section 340.6 allocates their relative weight in legal malpractice actions. Section 340.6 does not commence the one-year limitations period with a single, immediately ascertainable event. Instead, the Legislature decided the statutory period would depend first on the factually intensive question of when the plaintiff discovered, or reasonably should have discovered, the facts constituting the wrongful act or omission. (§ 340.6, subd. (a).)
The legislative scheme also effectively accommodates concerns about premature suits by tolling the limitations period if the plaintiff has not sustained any actual injury. (§ 340.6, subd. (a)(1).) As a result, a plaintiff who actually or constructively discovered the attorney’s error, but who has suffered no damage to support a legal malpractice cause of action, need not file suit prematurely. Rather, that plaintiff still has one year after sustaining actionable injury to assess whether, and how, to pursue a remedy against the attorney. The Legislature has accorded a measure of relief to a plaintiff who finds it impossible to bring suit by tolling the statutory period during the time the plaintiff “is under a legal or physical disability which restricts the *758 plaintiff’s ability to commence legal action.” (§ 340.6, subd. (a)(4).) Except for the circumstances specified in the statute, however, the Legislature expressly intended to disallow tolling or extension of the limitations period for other reasons. {Laird., supra, 2 Cal.4th at p. 618.)
Jordache’s other policy concerns likewise do not require us to interpret actual injury in a way that prolongs the limitations period, undermines the statute’s fundamental purposes, and conflicts with the Legislature’s intent. Jordache suggests that attorney-client relationships and privileges for confidential matters would be disrupted if clients had to sue their attorneys while pursuing related litigation. However, the explicit tolling provision for continuous representation addresses some of these concerns. (§ 340.6, subd. (a)(2).) Moreover, as Adams observed, existing law provides the means for courts to deal with potential problems that may arise from the filing of a legal malpractice action when related litigation is pending. {Adams, supra, 11 Cal.4th at pp. 592-593 (lead opn. of Arabian, J.).) The case management tools available to trial courts, including the inherent authority to stay an action when appropriate and the ability to issue protective orders when necessary, can overcome problems of simultaneous litigation if they do occur. {Ibid.)

Reconciling Budd, Section 340.6, and Subsequent Case Law

Jordache argues that several appellate decisions addressing section 340.6 support its view, while Brobeck’s position is contrary to other decisions, including Adams, supra, 11 Cal.4th 583, International Engine Parts, Inc. v. Feddersen & Co. (1995) 9 Cal.4th 606 [38 Cal.Rptr.2d 150, 888 P.2d 1279] {Feddersen), and ITT Small Business Finance Corp. v. Niles (1994) 9 Cal.4th 245 [36 Cal.Rptr.2d 552, 885 P.2d 965] {ITT).
Jordache relies on Sirott v. Latts (1992) 6 Cal.App.4th 923 [8 Cal.Rptr.2d 206]. There, the defendant attorneys allegedly advised a retiring doctor that he need not pay the required $50,000 premium for his medical malpractice insurer’s “tail” coverage after his retirement. {Id. at p. 926.) The attorneys told the doctor the premium was unconstitutional and an unenforceable form of age discrimination. {Ibid.) The doctor was sued later for medical malpractice. He had to use his own funds to retain defense counsel and to settle the suit in January 1990. {Id. at p. 927.) Meanwhile, the defendant attorneys unsuccessfully attempted to have the doctor’s tail coverage reinstated and to have the required premium ruled an unconstitutional form of age discrimination. In August 1987, an arbitration award rejected the doctor’s arguments and found the insurer had no duty to defend or indemnify him. A January *759 1988 judgment confirmed the arbitration award. The doctor sued the attorneys in January 1990, a few weeks after he paid the medical malpractice settlement. (Id. at pp. 926-927.)
The Court of Appeal, following Budd, supra, 6 Cal.3d 195, said the doctor sustained actual injury when he incurred attorney fees to defend the medical malpractice suit. (Sirott v. Latts, supra, 6 Cal.App.4th at pp. 928-929.) The doctor argued the attorney fees were not actual injury because they were less than the premium he would have paid if he had disregarded the negligent advice. The court rejected this “novel and unsupported argument” that actual injury can be negated by some form of offset. (Id. at p. 929.)
Sirott went on to comment that the doctor sustained another form of actual injury more than one year before he sued the attorneys. The court said that when the judgment confirmed the arbitration award, the doctor suffered damage at that point as well because he lost the right to malpractice insurance coverage—the subject of the allegedly negligent advice. (Sirott v. Latts, supra, 6 Cal.App.4th at p. 929.)
However, contrary to Jordache’s suggestion, Sirott does not support a general rule that judicial determinations are necessary precursors to actual injury. First, the court properly found under Budd that the doctor sustained actual injury for purposes of section 340.6 when he incurred costs to defend the medical malpractice action because he had no malpractice insurance. (Sirott v. Latts, supra, 6 Cal.App.4th at pp. 928-929; see Adams, supra, 11 Cal.4th at pp. 591, fn. 5 and accompanying text (lead opn. of Arabian, J.); id. at p. 597 (cone. opn. of Kennard, J.); cf. Walker v. Pacific Indemnity Co. (1960) 183 Cal.App.2d 513, 516 [6 Cal.Rptr. 924] [no injury when inadequate insurance coverage nevertheless provided defense of third party’s claim].)
Second, the attorneys’ negligent insurance advice essentially was their prediction of how the insurer’s right to the tail coverage premium, and the doctor’s right to coverage without paying the premium, would be resolved if adjudicated. Thus, we view this aspect of the Sirott decision as an instance where the propriety of the attorney’s advice or actions depended on the outcome of a claim by or against a client. (See Baltins v. James, supra, 36 Cal.App.4th at p. 1208.) In these circumstances, the claim may have to be resolved in order for the client to know that the attorney erred. The pertinent inquiry there may not be when the plaintiff sustained actual injury, but when the plaintiff discovered, or reasonably should have discovered, the facts constituting a wrongful act or omission. (§ 340.6, subd. (a).)
*760 In any event, the circumstances of Sirott do not support Jordache’s claims of delayed actual injury. Jordache does not allege that Brobeck negligently predicted a future adjudication’s result or otherwise advised Jordache incorrectly. Rather, Jordache alleges only omissions—a failure to investigate insurance issues or render any appropriate advice. Also, Jordache acknowledged it discovered Brobeck’s alleged errors before it sued its insurers. Like the doctor in Sirott, Jordache incurred attorney fees because its attorneys’ alleged errors caused it to forgo a primary benefit of a liability insurance policy. Sirott therefore does not support Jordache’s assertion that its actual injury occurred only when it settled the coverage litigation.
Jordache also refers to Foxborough v. Van Atta, supra, 26 Cal.App.4th 217. The defendant attorney there allegedly failed to secure certain automatic development rights without time constraints in preparing an exchange agreement for property the plaintiff owned. (Id. at p. 222.) Instead, the development rights expired after three years, as a state regulation required. (Id. at p. 223.) The plaintiff then had to resort tó a more onerous, expensive, and unpredictable course to pursue its development plans. The plaintiff also sued the other party to the exchange agreement, seeking damages for an alleged failure to notify the plaintiff the rights would expire. (Ibid.) The Court of Appeal held the plaintiff sustained actual injury when the development rights expired; the statute was not tolled until the plaintiff lost its suit against the other party. (Id. at pp. 226-227.)
Jordache finds it significant that Foxborough did not hold the plaintiff sustained actual injury when the exchange agreement became effective without unlimited automatic development rights. Jordache suggests Foxborough therefore supports the proposition that an immediate diminution of a right, such as the unlimited development right, is not actual injury. However, as Foxborough noted, the plaintiff could have exercised the development rights at any time during the initial three-year period. Thus, during that time, the attorney’s alleged negligence created only the potential for harm. (Fox-borough v. Van Atta, supra, 26 Cal.App.4th at p. 227.) The loss of the plaintiff’s automatic development rights, and hence the actual injury, occurred when the three-year period expired. (Ibid.)
Jordache also relies on Baltins v. James, supra, 36 Cal.App.4th 1193. The plaintiffs in that case, husband and wife, alleged the attorney negligently advised them about transferring and managing real property while the husband appealed an order setting aside his community property settlement agreement with his former wife. According to the complaint, the attorney told plaintiffs that, during the appeal, the husband could treat the property as *761 if the order did not exist. The husband transferred a ranch to his new wife, although it was a community asset of his former marriage. He also spent more than $500,000 on properties he received under the former settlement agreement. He alleged he made the expenditures because the attorney told him he would receive either title to the properties or reimbursement. After the order was affirmed on appeal, the trial court entered a judgment finding the husband breached his fiduciary duties regarding the community property and denying most of the reimbursement credits he sought, (id. at pp. 1197-1199.) In the legal malpractice action, the Court of Appeal concluded, “Under the [plaintiffs’] allegations, any error in [the attorney’s] advice was not determinable, and had no effect, until following his advice resulted in the adverse judgment in the dissolution action. [Citations.]” {Id. at p. 1208.)
Jordache contends that, as in Baltins v. James, Brobeck’s alleged negligence exposed Jordache only to a threat of injury that depended on the insurers’ successfully raising the late notice defense. However, the alleged negligence in Baltins v. James was that the attorney predicted incorrectly how a court would resolve an issue in the future. Thus, the propriety of the legal advice, and hence the existence and effect of error, depended on the future resolution of the issue adversely to the client. {Baltins v. James, supra, 36 Cal.App.4th at pp. 1196, 1208; cf. Sirott v. Latts, supra, 6 Cal.App.4th at pp. 929-930.)[9]
By contrast, Brobeck’s alleged professional negligence did not require an adjudication to indicate its existence. Jordache’s claims against Brobeck do not require another proceeding to determine the propriety of affirmative advice or actions. Nor was this an instance where the alleged negligence would have no effect at all until a subsequent adjudication. Brobeck’s neglect required Jordache to pay defense costs in the Marciano action for years and to lose investment opportunities for those funds. The alleged omissions also gave the insurers an objectively viable defense, which National Union raised immediately when it answered Jordache’s complaint in the insurance coverage action. The circumstances Jordache alleges are not comparable to those of Baltins v. James, supra, 36 Cal.App.4th 1193. Like *762 the plaintiff in Sirott v. Latís, supra, 6 Cal.App.4th 923, and unlike the plaintiffs in Baltins v. James, Jordache expended attorney fees as a direct result of its attorneys’ alleged negligence well before the resolution of any collateral judicial action.
Turning to the more recent decisions of this court, Jordache contends that interpreting actual injury to mean only the damage necessary to assert a cause of action would be contrary to ITT, supra, 9 Cal.4th 245, Feddersen, supra, 9 Cal.4th 606, and Adams, supra, 11 Cal.4th 583. As we have emphasized, Adams reaffirmed that Budd articulated the correct standard for determining actual injury under section 340.6. (Adams, supra, 11 Cal.4th at pp. 588-589 (lead opn. of Arabian, J.); id. at p. 594 (cone. opn. of Kennard, J.).) Thus, Adams is entirely consistent with the rule that, under the Legislature’s codification of Budd, actual injury occurs when the plaintiff sustains any loss or injury legally cognizable as damages in a legal malpractice action based on the acts or omissions that the plaintiff alleged. (See Adams, supra, 11 Cal.4th at pp. 588-589; Budd, supra, 6 Cal.3d at pp. 200-202.) We consider, then, whether the opinion in ITT is compatible with this rule.
In ITT, the defendant attorney prepared a promissory note and loan documents to give the plaintiff lender various security interests. (ITT, supra, 9 Cal.4th at p. 248.) A few years later, the borrower filed for bankruptcy and instituted an adversary proceeding that challenged the adequacy of the documents to protect the security interests. (Ibid.) The lender retained counsel to defend the documents’ sufficiency in the adversary proceeding. The lender notified the attorney that it expected to be indemnified for losses attributable to negligence in preparing the loan papers; it also suggested that the attorney should notify his malpractice insurer. (Id. at pp. 248-249.) About two years later, the lender settled with the debtor and received less than the full value of its security. Two months after the settlement, the lender sued the attorney for negligence in preparing the loan documents. (Id. at p. 249.)
The attorney argued that, in transactional malpractice actions, once the former client incurs attorney fees defending the attorney’s work, it “has discovered the fact of damage that triggers the running of the limitations period . . . .” (ITT, supra, 9 Cal.4th at p. 251, original italics.) Of course, discovery of damage is not a necessary component of actual injury under section 340.6, subdivision (a)(1). (Foxborough v. Van Atta, supra, 26 Cal.App.4th at p. 227.)
In ITT, the lender alleged that it incurred attorney fees in an effort to protect its security interests and to mitigate its damages. (ITT, supra, 9 *763 Cal.4th at pp. 252, 257.) Nevertheless, the court did not acknowledge that these attorney fees, incurred to defend negligently prepared documents and reduce the alleged error’s effects, constituted actual injury. (Id. at p. 253.) Instead, the court declared a broad, categorical rule: “[I]n transactional legal malpractice cases, when the adequacy of the documentation is the subject of dispute, an action for attorney malpractice accrues on entry of adverse judgment, settlement, or dismissal of the underlying action. It is at this point that the former client has discovered the fact of damage and suffered ‘actual injury’ due to the malpractice under section 340.6.” (ITT, supra, 9 Cal.4th at p. 258, original italics.)
In ITT and again in Adams, this court described ITT as presenting a narrow holding restricted to the circumstances of that case. (ITT, supra, 9 Cal.4th at p. 258; Adams, supra, 11 Cal.4th at p. 588 (lead opn. of Arabian, J.).) We are now convinced, however, that the rules ITT advanced cannot be reconciled with the particularized factual inquiry required to determine actual injury under section 340.6 in accord with Budd, Adams, and our decision in this case. The Legislature, by codifying the rule established in Budd, supra, 6 Cal.3d 195, did not toll the limitations period to await preordained configurations of injury.
The facts of each case must be examined in light of the specific attorney errors the plaintiff in each case alleges. Consequently, the rule that applies when a plaintiff sustains actual injury from malpractice in transactional matters cannot differ from the rule that applies when claims involve other areas of legal advice and services. The resolution of litigation related to alleged malpractice may or may not mark the point at which a plaintiff first sustains actual injury under section 340.6. The statutory scheme cannot accommodate a peremptory rule that declares otherwise. Accordingly, because ITT employed criteria for determining actual injury under section 340.6 that conflict with the principles reaffirmed in this opinion, we overrule it.
Jordache misconceives Feddersen by attempting to apply that case to an analysis of section 340.6. As Adams noted, Feddersen presented specialized circumstances and did not articulate a rule of broad or general applicability. (Adams, supra, 11 Cal.4th at p. 588 (lead opn. of Arabian, J.); id. at pp. 595-596 (cone. opn. of Kennard, J.).) In Feddersen, the court considered when an accountant’s allegedly negligent tax return preparation caused harm that commenced the two-year limitations period provided in section 339, subdivision 1. (Feddersen, supra, 9 Cal.4th at p. 608.)
A key distinction between Feddersen and Jordache’s case is the particular limitations statute involved. Feddersen dealt with section 339, subdivision 1, *764 and its two-year limitations period for suits “upon a contract, obligation or liability not founded upon an instrument of writing . . . .” (§ 339, subd. 1; Feddersen, supra, 9 Cal.4th at pp. 621-622.) The standards for beginning that limitations period result from judicial decisions rather than legislative enactment. (See Feddersen, supra, 9 Cal.4th at p. 614; Neel, supra, 6 Cal.3d 176; Budd, supra, 6 Cal.3d 195.) In section 340.6, the Legislature established a detailed, explicit, and exclusive scheme for commencing and tolling the legal malpractice limitations periods. The Legislature did not establish a comparable scheme for section 339. Therefore, Feddersen does not, and was not intended to, provide rules for legal malpractice actions—the only subject we address here.[10]
Conclusion
As this court recognized in Adams, the determination of when attorney error has caused actual injury under section 340.6, subdivision (a)(1), cannot depend on facile, “bright line” rules. (Adams, supra, 11 Cal.4th at pp. 588, 591 (lead opn. of Arabian, J.); id. at pp. 594, 596 (cone, opn. of Kennard, J.).) Instead, the particular facts of each case must be examined in light of the wrongful act or omission the plaintiff alleges against the attorney. When the alleged error causes injury or harm recoverable in a legal malpractice action, the plaintiff has “sustained actual injury” that ends tolling under section 340.6, subdivision (a)(1).
This rule conforms to the language of the statute and the Legislature’s intention to codify Budd, supra, 6 Cal.3d 195. The rule recognizes that the diverse tasks and responsibilities attorneys undertake can create many occasions for error and injury. Thus, only the facts and circumstances of each case, analyzed in light of the alleged negligence and its consequences as revealed by the evidence, can establish when the plaintiff sustained actual injury under section 340.6. When the material facts are undisputed, the trial court can resolve the question as a matter of law according to the principles governing summary judgment. (Adams, supra, 11 Cal.4th at p. 592 (lead opn. of Arabian, J.); Budd, supra, 6 Cal.3d at p. 202; see § 437c.) Here, the trial court concluded the undisputed facts established that Jordache sustained actual injury after it discovered Brobeck’s alleged neglect and more than one year before its suit was deemed filed. The Court of Appeal reversed that decision. We conclude the Court of Appeal erred in holding Jordache did not *765 sustain actual injury before settlement of the insurance coverage litigation. The injurious consequences for Jordache of Brobeck’s alleged omissions existed more than one year before Jordache sued. The judgment of the Court of Appeal is reversed. Because the Court of Appeal did not reach the other issues Jordache raised on appeal from the trial court’s judgment, we remand the case for further proceedings consistent with this opinion.
. Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

Code of Civil Procedure section 340.6, subdivision (a)(1), states: “(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [H] (1) The plaintiff has not sustained actual injury; . . .”
All further statutory references are to the Code of Civil Procedure, except as otherwise noted.

The Nakashes were officers, directors, and shareholders of Jordache Enterprises, Inc. Together with their company and another related company, Ditto Apparel of California, Inc., they are the plaintiffs in this action. We refer to the plaintiffs collectively as Jordache in this opinion.

Jordache also asserted that Brobeck continued to represent it in the Marciano action through November 1989, thus tolling the limitations period under section 340.6, subdivision (a)(2). That provision tolls the period during the time “(2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred . . . .” (§ 340.6, subd. (a)(2).) The trial court concluded Brobeck no longer represented Jordache regarding the “subject matter” of the alleged malpractice by December 1987, when Jordache gave Conkle & Olesten exclusive authority over insurance coverage matters.

Having found that Jordache did not sustain actual injury more than one year before filing suit, the Court of Appeal found it unnecessary to address the other issues Jordache raised, including the applicability of any other tolling provision.

By phrasing the issue in these terms, we do not decide the merits of Jordache’s claim that the “continuous representation” tolling provision of section 340.6, subdivision (a)(2), also applies to this case. The Court of Appeal did not reach the merits of the trial court’s ruling on that point. Our grant of review did not include this issue, and we do not resolve it. We assume other tolling provisions do not apply only for the purpose of focusing on the “actual injury” question.

Both Brobeck and Jordache requested judicial notice of various legislative history materials and other documents. We grant both requests with respect to a document that is contemporaneous with the adoption of the “actual injury” language—the Assembly Committee on the Judiciary Digest of Assembly Bill No. 298 (1977-1978 Reg. Sess.) as amended May 9, 1977 (Digest). (Evid. Code, § 452, subd. (c).)
The parties’ requests for judicial notice included other legislative materials and copies of other courts’ decisions. However, the requests present no issue for which judicial notice of these items is necessary, helpful, or relevant. Accordingly, we deny the request for judicial notice of the additional legislative history materials and the various sister state and-federal court decisions. (See Mangini v. R. J. Reynolds Tobacco Co. (1994) 7 Cal.4th 1057, 1063-1065 [31 Cal.Rptr.2d 358, 875 P.2d 73].) We also deny Jordache’s request for judicial notice of three Brobeck partners’ biographical data, extracted from a popular national directory of attorneys and law firms. We do not require that information to decide this case, and Jordache has not demonstrated the directory satisfies the requirements for judicial notice under Evidence Code section 452, subdivision (h).

With respect to the plaintiff’s proposed date of damage, the court said, “If plaintiff’s action in tort had not earlier accrued, it at least matured on entry of judgment because he clearly then became obligated to pay a considerable sum to the [other party] or to post a bond on appeal. [Citation.]” {Budd, supra, 6 Cal.3d at p. 202, fn. omitted.) Thus, Budd considered the adverse judgment in the underlying action to be the last of the possible actionable injuries discussed in that case.

See Lynch, California Negotiation and Settlement Handbook (1991) page vii (foreword by former California Supreme Court Chief Justice Malcolm M. Lucas).

Baltins contains language suggesting that Laird, ITT, and Feddersen established a “bright line test” for actual injury with broad, general applicability. {Baltins v. James, supra, 36 Cal.App.4th at pp. 1196, 1204-1205.) However, as Adams made clear, there are no short cut “bright line” rules for determining actual injury under section 340.6. {Adams, supra, 11 Cal.4th at pp. 588, 591, fn. 4 (lead opn. of Arabian, J.); id. at pp. 594, 596 (cone. opn. of Kennard, J.).) Instead, actual injury issues require examination of the particular facts of each case in light of the alleged wrongful act or omission. {Id. at pp. 588, 591-592 (lead opn. of Arabian, J.); id. at pp. 595-597 (cone. opn. of Kennard, J.).) Thus, to the extent the language in Baltins v. James, supra, 36 Cal.App.3d 1193, can be read as implying that “actual injury” is determined by any bright line rule, we disapprove that language.

Feddersen relied in part on the reasoning of ITT, supra, 9 Cal.4th 245, in applying section 339, subdivision 1, to an accountant’s allegedly negligent filing of a tax return. (Feddersen, supra, 9 Cal.4th at pp. 619-620.) However, for the reasons noted above, we have no occasion in this case to reexamine Feddersen’s rationale or rule.