[No. D056533. Fourth Dist., Div. One. May 10, 2011.]

POINTE SAN DIEGO RESIDENTIAL COMMUNITY, L.P., et al., Plaintiffs and Appellants, v.
PROCOPIO, CORY, HARGREAVES & SAVITCH, LLP, et al., Defendants and Respondents.

**COUNSEL**

Vivoli & Associates, Michael W. Vivoli, Jason P. Saccuzzo; Luce, Forward, Hamilton & Scripps and Charles A. Bird for Plaintiffs and Appellants.

Kirby Noonan Lance & Hoge, David J. Noonan and Steven W. Sanchez for Defendants and Respondents.

**OPINION**

**HALLER, J.**—Three entities sued their former attorneys alleging professional negligence and related claims.[1] The court entered judgment in defendants' favor after sustaining a demurrer without leave to amend and granting a judgment on the pleadings on plaintiffs' fourth amended complaint. The court concluded each of the claims was barred by the statute of limitations and the relation-back doctrine was inapplicable. We reverse, determining the claims related back to an earlier, timely filed complaint.

---

[1] The three plaintiff entities are Pointe San Diego Residential Community, L.P. (Pointe Residential); Pointe SDMU, L.P.; and Gosnell Builders Corporation of California (Gosnell Builders). Defendants are Attorney Steven Strauss and law firm Procopio, Cory, Hargreaves & Savitch, LLP (collectively Procopio).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' malpractice action against Procopio involves Procopio's legal representation of plaintiffs in a complex multiparty real estate litigation that spawned numerous appeals in this court. Plaintiffs filed their original complaint against Procopio while the underlying litigation was ongoing and within one year after they substituted a new counsel. Plaintiffs then filed several amended malpractice complaints. The trial court found the fourth amended complaint was untimely. Plaintiffs challenge this conclusion on appeal.

To properly resolve the appellate issues, it is necessary to summarize the history of the underlying litigation and its relationship to the complaint and amended complaints filed in the malpractice action. Because we are reviewing a judgment on the pleadings and on a demurrer, we base this factual description on the allegations of the complaint and documents that were properly the subject of judicial notice. (See *Buesa v. City of Los Angeles* (2009) 177 Cal.App.4th 1537, 1543 [100 Cal.Rptr.3d 86].)

This action arises from the development of a 1,000-acre master-planned community in Spring Valley, consisting of a residential community, a commercial business park, and a golf course and resort. The property planned for the residential development was initially held by plaintiff Pointe Residential, a limited partnership affiliated with plaintiff Gosnell Builders. In the mid-1990's, Pointe Residential and Gosnell Builders entered into a complex series of transactions with Palomba Weingarten and related entities in which Weingarten agreed to provide needed financing for the project. One of the Weingarten-related entities, W.W.I. Properties, LLC (WWI), acquired ownership of the residential property. Plaintiff Pointe SDMU, a limited partnership affiliated with Gosnell Builders, was formed to own and develop the "mixed use" portion of the property.

By 1997, the Gosnell and Weingarten parties were engaged in numerous disputes pertaining to the residential and mixed-use developments. In about August 1998, the three plaintiffs (Pointe Residential, Pointe SDMU, and Gosnell Builders) retained the Procopio law firm, which filed two lawsuits on behalf of these plaintiffs.

In the first case (known as the residential litigation), Gosnell Builders and Pointe Residential sued Weingarten, WWI, and Astra Management Corporation (Astra), a Weingarten-controlled corporation of which Pointe

Residential was a minority shareholder. Weingarten filed a cross-complaint against Pointe Residential and Gosnell Builders.

In the second case (known as the mixed-use case), Pointe SDMU sued Atlas Homes, LLC (Atlas), an entity formed by Weingarten. Atlas filed a cross-complaint against various parties, including Pointe SDMU, Pointe Residential and Gosnell Builders.

The two cases were assigned to Superior Court Judge Robert May. In November 2001, Judge May conducted a court trial on certain equitable issues in the residential action. At the trial, the plaintiffs (Pointe Residential and Gosnell Builders) were represented by Procopio. In March 2002, the court issued a statement of decision, finding Weingarten liable for breach of fiduciary duty on a shareholder derivative claim asserted by Pointe Residential on behalf of Astra. The court deferred ruling on several accounting and punitive damage issues.

Shortly thereafter, Judge May consolidated the mixed-use case with the residential case for purposes of the next phase of the trial. The entire consolidated action (the residential and mixed-use cases) will be referred to as the Pointe I litigation.

In November 2002, the nonjury trial in the Pointe I litigation began, and encompassed all remaining causes of action and certain issues on punitive damages. During the trial, the three plaintiffs continued to be represented by Procopio. Pointe SDMU additionally retained a second attorney, Michael Vivoli, to serve as cocounsel for Pointe SDMU. At the trial, the parties raised numerous legal and factual issues involving their complicated business relationships, and the trial took place over the next two months.

On February 7, 2003, Vivoli was associated as cocounsel also for Pointe Residential and Gosnell Builders.

On February 25, 2003, Judge May issued a tentative decision in the Pointe I trial, finding in plaintiffs' favor on some of their claims and finding for defendants on others. On April 1, 2003, the court confirmed the tentative decision in all respects. The court then ordered an accounting and appointed a referee to submit recommendations to the court.

On about April 18, 2003, Vivoli filed a new and independent action on behalf of the three plaintiffs (Pointe Residential, Gosnell Builders, and Pointe SDMU) against Weingarten and related entities. This action, known as the Pointe II case, was filed primarily to recover certain damages resulting from

Weingarten's posttrial conduct, and to recover certain damages for *Pointe SDMU* that it had not sought in the first Pointe I action.

On May 21, 2003, plaintiffs substituted Vivoli as their sole counsel in the Pointe I litigation (the residential and mixed-use cases). During the next year, Judge May conducted several hearings and issued additional written rulings pertaining to various unresolved issues from the Pointe I trial.

While this Pointe I litigation activity was ongoing, and 11 months after terminating their relationship with Procopio, on April 9, 2004, plaintiffs (Pointe Residential, Pointe SDMU, and Gosnell Builders) filed a legal malpractice action against Procopio. The malpractice complaint lists each of the three parties as plaintiffs and names Procopio and Attorney Steven Strauss as defendants. The complaint contains a single cause of action, "General Negligence," and alleges "within the last year" that "Defendants, as Plaintiffs' attorneys, failed to use due care in the handling of Pointe San Diego Residential Community, L.P. et al. v. Palomba Weingarten, et al. litigation."

Less than four months later, in July 2004, plaintiffs filed a first amended complaint in the legal malpractice action, providing substantially more detail with respect to the nature of the malpractice claims as to each plaintiff. Those allegations essentially concerned Procopio's failure to assert specific claims and seek certain remedies in the Pointe I consolidated litigation.

Procopio filed an answer and a cross-complaint in September 2004.

On September 22, 2004, Judge May entered a final judgment in the Pointe I case. In the final judgment, the court reconfirmed its earlier findings that each plaintiff prevailed on certain claims, but was unsuccessful on other claims.

Each set of parties appealed. While the cross-appeals were pending, in December 2005, plaintiffs filed a second amended complaint in the legal malpractice action, reorganizing the causes of action and adding several additional grounds for the malpractice claim arising from Procopio's representation of the plaintiffs in the Pointe I litigation. Procopio filed an answer to this complaint.

Nineteen months later, in July 2007, this court issued its decision on the Pointe I litigation appeals, affirming the judgment in some respects, reversing the judgment in other respects, and reversing the order granting a partial new trial. (*Pointe San Diego Residential Community, L.P. v. W.W.I. Properties, L.L.C.* (July 11, 2007, D044695) [nonpub. opn.].) We shall refer to this decision as the July 2007 *Pointe I* appellate decision. Of relevance

here, this court held (1) Judge May erred in concluding that Pointe Residential had timely alleged WWI's breach of an agreement known as the "set-aside" agreement; and (2) Judge May erred in concluding that Pointe SDMU timely alleged a permanent trespass claim and thus Pointe SDMU was not entitled to the $2.6 million damage award for this breach.

Eleven months later, on June 12, 2008, plaintiffs filed a third amended complaint in the legal malpractice action, containing eight causes of action, each of which was based on Procopio's representation of plaintiffs in the Pointe I litigation. The first seven causes of action identified specific acts or omissions alleged to constitute legal malpractice in the Pointe I litigation, several of which were based on our determinations in the July 2007 *Pointe I* appellate decision. The eighth cause of action alleged breach of contract based on the negligence allegations.

Procopio demurred to the first cause of action (pertaining to Procopio's failure to allege and recover damages for breach of the set-aside agreement), contending primarily that the claim was untimely. Plaintiffs opposed the demurrer, arguing that the claim was valid and timely as to Pointe Residential and Gosnell Builders because they sustained no injuries until this court filed its July 2007 *Pointe I* appellate decision, and in any event, the claim related back to the original April 2004 malpractice complaint. The court rejected these arguments, but provided plaintiffs leave to amend the complaint.

Plaintiffs then filed their fourth amended complaint, essentially alleging the same causes of action, with certain modifications and clarifications. The first cause of action sought damages for Procopio's failure to recover relief for breach of the set-aside agreement on behalf of Pointe Residential and Gosnell Builders. The second cause of action alleged on behalf of Pointe SDMU that Procopio failed to timely plead a permanent trespass claim. The third cause of action alleged on behalf of Pointe Residential that Procopio failed to claim half of the $4,187,465 tax benefits that Weingarten appropriated to herself. The fourth cause of action pertained to interests in the diversion of fill dirt and unauthorized grading. The fifth cause of action was for failure to recover all damages for breach of a development management agreement. The sixth cause of action was for failure to name Weingarten as a defendant in the Pointe SDMU action (the complaint named only Atlas, which is insolvent). The eighth and ninth causes of action were for breach of contract and breach of fiduciary duty based on the prior allegations.[2]

The complaint also included additional allegations pertaining to the dates plaintiffs sustained injuries from each alleged act of malpractice and allegations concerning the relation-back issue. With respect to the relation-back

---

[2] Plaintiffs voluntarily dismissed their seventh cause of action shortly after filing this amended complaint.

issue, plaintiffs alleged they did not include more detailed facts in their original complaint because they were unaware of the precise nature of their attorneys' malpractice, particularly given that the litigation was ongoing and no final judgment had been entered. Plaintiffs also alleged that Procopio refused to agree to toll the statute of limitations and "[a]t all relevant times, [Procopio was] uniquely and solely aware of, and in possession of the fact that, their conduct in the representation of Plaintiffs had fallen below the standard of care, and that Defendants' breach of the standard of care either had or might potentially in the future cause damage to Plaintiffs," but Procopio had concealed these facts from plaintiffs.

Procopio demurred to the first and fourth through sixth causes of action. The court sustained the demurrer without leave to amend on the basis the claims were time-barred. The court found plaintiffs suffered injuries from the claimed malpractice no later than April 2003. The court also found the relation-back doctrine was inapplicable because the original complaint did not contain sufficient factual allegations. Relying on *Davaloo v. State Farm Ins. Co.* (2005) 135 Cal.App.4th 409 [37 Cal.Rptr.3d 528] (*Davaloo*), the court stated that although plaintiffs filed the original April 2004 complaint within one year of the accrual of the cause of action, the complaint was "wholly defective" because it was "void of operative facts" and thus the subsequent complaints could not relate back to the complaint.

The court then granted Procopio's demurrer and motion for judgment on the pleadings with respect to the remaining causes of action (second, third, eighth and ninth). The court found the second and third causes of action accrued more than one year before plaintiffs asserted the allegations in a complaint, and that these claims did not relate back to the original complaint. The court also concluded that Pointe SDMU could not recover under the second cause of action because Atlas, the sole underlying defendant, was insolvent and could not have paid a judgment.[3]

Procopio thereafter dismissed its cross-complaint with prejudice based on an agreement of the parties to submit the matter to binding arbitration following the appeal.

---

[3] Since that time, this court held the trial court erred in refusing to consider plaintiffs' motion to add Weingarten as a cojudgment debtor on an alter ego theory after the matter was remanded. (*Pointe San Diego Residential Community L.P. v. Weingarten* (Nov. 22, 2010, D056333) [nonpub. opn.].)

## DISCUSSION

### I. *Review Standards*

" 'On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' " (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650 [43 Cal.Rptr.3d 434].) In reviewing the complaint, we must assume the truth of all facts properly pleaded by the plaintiff and matters properly judicially noticed. (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814 [107 Cal.Rptr.2d 369, 23 P.3d 601].) However, we "do not assume the truth of contentions, deductions, or conclusions of fact or law and may disregard allegations that are contrary to the law or to a fact which may be judicially noticed." (*Dutra v. Eagleson* (2006) 146 Cal.App.4th 216, 221 [52 Cal.Rptr.3d 788].)

" 'A motion for judgment on the pleadings performs the same function as a general demurrer, and [thus] attacks only defects disclosed on the face of the pleadings or by matters that can be judicially noticed. [Citations.]' [Citation.]" (*Burnett v. Chimney Sweep* (2004) 123 Cal.App.4th 1057, 1064 [20 Cal.Rptr.3d 562].) As with our review of an order sustaining a demurrer, we review de novo the court's judgment on the pleadings. (*Id.* at pp. 1064–1065.)

Further, to prevail on a demurrer based on the statute of limitations, a defendant must establish the entire cause of action is untimely. A demurrer challenges a cause of action and cannot be used to attack a portion of a cause of action. (*Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 384–385 [36 Cal.Rptr.3d 31].) Thus, where a plaintiff sues a defendant for legal malpractice alleging several distinct acts of malpractice with respect to a single representation, a demurrer is properly granted on the basis of the statute of limitations only if *each* alleged act of malpractice is time-barred. (*PH II, Inc. v. Superior Court* (1995) 33 Cal.App.4th 1680, 1682 [40 Cal.Rptr.2d 169] [reversing demurrer sustained to legal malpractice cause of action because plaintiff timely alleged at least one negligent act].)

This rule applies here even though plaintiffs have separated Procopio's various alleged acts of malpractice during the Pointe I litigation into distinct causes of action. The gravamen of a complaint and the nature of the right sued upon, rather than the form of the action, is relevant for purposes of statute of limitations analysis. (*Augusta v. United Service Automobile Assn.* (1993) 13 Cal.App.4th 4, 8 [16 Cal.Rptr.2d 400].) Each plaintiff (Pointe Residential, Pointe SDMU, and Gosnell Builders) had one primary right—the right to be free of negligence by their attorneys in connection with the

litigation for which they were retained. (See *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 860 [21 Cal.Rptr.2d 691, 855 P.2d 1263].) Plaintiffs alleged their attorneys breached that right in multiple ways, but it nevertheless remained a single right. Thus, although each separate act of malpractice allegedly committed during the Pointe I litigation has a separate "cause of action" number and label, for purposes of determining whether the demurrer should have been sustained, we look at the malpractice claims as one cause of action. (See *San Diego Unified School Dist. v. County of San Diego* (2009) 170 Cal.App.4th 288, 305 [87 Cal.Rptr.3d 796]; see also *Slater v. Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593].)

## II. Legal Principles Regarding Limitations Period for Legal Malpractice

■ The statute of limitations for legal malpractice actions is contained in Code of Civil Procedure section 340.6, subdivision (a).[4] Under this statute, the one-year limitations period generally commences when the plaintiff actually or constructively discovers the facts of the wrongful act or omission, but no later than four years. (§ 340.6, subd. (a); see *Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 508 [66 Cal.Rptr.3d 52, 167 P.3d 666].) However, this limitations period is tolled until the plaintiff suffers actual loss or damage resulting from the allegedly negligent actions and/or while the attorney continues to represent the client in the same matter. (§ 340.6, subd. (a)(1), (2); see *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 749 [76 Cal.Rptr.2d 749, 958 P.2d 1062] (*Jordache*); *Gold v. Weissman* (2004) 114 Cal.App.4th 1195, 1199–1200 [8 Cal.Rptr.3d 480].)

■ For purposes of the tolling rule, the "test for actual injury under section 340.6 . . . is whether the plaintiff has sustained *any* damages compensable in an action . . . ." (*Jordache, supra*, 18 Cal.4th at p. 751, italics added.) Under this standard, "the fact of damage, rather than the amount, is the critical factor." (*Id.* at p. 752.) Thus, a plaintiff sustains "actual injury"

---

[4] Code of Civil Procedure section 340.6, subdivision (a) states in relevant part: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . . [I]n no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury. [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred . . . ." All further statutory references are to the Code of Civil Procedure.

when he or she incurs attorney fees to rectify the problem caused by the prior attorney's alleged negligence. (*Id.* at pp. 750–751.) Further, actual injury may occur even if the loss is contingent on an appeal or other final adjudication. (*Id.* at p. 754; *Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 42 [123 Cal.Rptr.2d 555].) The analysis "concerns whether 'events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages.' [Citation.] However, once the plaintiff suffers actual harm, neither difficulty in proving damages nor uncertainty as to their amount tolls the limitations period." (*Jordache, supra,* 18 Cal.4th at p. 752.)

In sustaining the demurrer and granting the motion for judgment on the pleadings, the court found plaintiffs' claims in the fourth amended complaint were untimely because the complaint was filed more than one year after plaintiffs discovered the facts constituting the wrongful omissions and suffered injury, and more than one year after plaintiffs discontinued their relationship with Procopio and began paying fees for their new attorney's services. The court further found the relation-back doctrine inapplicable based on *Davaloo, supra,* 135 Cal.App.4th 409.

On appeal, plaintiffs argue primarily that the claims were timely because they related back to the original complaint. They alternatively argue that even if the relation-back doctrine is inapplicable, they timely filed the complaint pertaining to three factual grounds for their malpractice claim because the fees paid to their second attorney were unrelated to *these* alleged acts of malpractice. They essentially contend they did not suffer injury with respect to these acts of malpractice until this court filed its opinion on the appeal from the underlying judgment.

We conclude the relation-back doctrine applies in this case. We thus need not analyze whether the court properly found the record establishes plaintiffs sustained injury with respect to each discrete act of alleged malpractice more than one year before they filed their complaint.

### III.  *Relation Back*

An amended complaint is considered a new action for purposes of the statute of limitations only if the claims do not "relate back" to an earlier timely filed complaint. Under the relation-back doctrine, an amendment relates back to the original complaint if the amendment (1) rests on the same general set of facts; (2) involves the same injury; and (3) refers to the same instrumentality. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 408–409 [87 Cal.Rptr.2d 453, 981 P.2d 79]; *Barrington v. A. H. Robins Co.* (1985) 39 Cal.3d 146, 150–151 [216 Cal.Rptr. 405, 702 P.2d 563]; *Austin v.*

*Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596, 600 [15 Cal.Rptr. 817, 364 P.2d 681] (*Austin*).) An amended complaint relates back to an earlier complaint if it is based on the same general set of facts, even if the plaintiff alleges a different legal theory or new cause of action. (*Smeltzley v. Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 934, 936 [136 Cal.Rptr. 269, 559 P.2d 624]; *Idding v. North Bay Construction Co.* (1995) 39 Cal.App.4th 1111, 1113 [46 Cal.Rptr.2d 149] (*Idding*).) However, the doctrine will not apply if the "the plaintiff seeks by amendment to recover upon a set of facts entirely unrelated to those pleaded in the original complaint." (*Stockwell v. McAlvay* (1937) 10 Cal.2d 368, 375 [74 P.2d 504].)

■ In determining whether the amended complaint alleges facts that are sufficiently similar to those alleged in the original complaint, the critical inquiry is whether the defendant had adequate notice of the claim based on the original pleading. "The policy behind statutes of limitations is to put defendants on notice of the need to defend against a claim in time to prepare a fair defense on the merits. This policy is satisfied when recovery under an amended complaint is sought on the same basic set of facts as the original pleading. [Citation.]" (*Garrison v. Board of Directors* (1995) 36 Cal.App.4th 1670, 1678 [43 Cal.Rptr.2d 214]; accord, *Lamont v. Wolfe* (1983) 142 Cal.App.3d 375, 379 [190 Cal.Rptr. 874]; see *Benfield v. Mocatta Metals Corp.* (2d Cir. 1994) 26 F.3d 19, 23 [finding that for relation-back doctrine to apply, "there must be a sufficient commonality" of alleged acts of wrongdoing to preclude a claim of "unfair surprise"].)[5] Additionally, in applying the relation-back analysis, courts should consider the "strong policy in this state that cases should be decided on their merits." (*Idding, supra,* 39 Cal.App.4th at p. 1114; see *Smeltzley v. Nicholson Mfg. Co., supra,* 18 Cal.3d at p. 939.)

Under these principles, the third and fourth amended complaints related back to the original complaint. The original complaint named plaintiffs Pointe Residential, Gosnell Builders, and Pointe SDMU, and defendants Procopio and attorney Strauss. The complaint was a form complaint, and the plaintiffs checked the box marked "General Negligence" on the form. Pursuant to the instructions on the form, plaintiffs also included an attachment alleging defendants were the "legal (proximate) cause of damages to plaintiff[s]" and "[b]y the following acts or omissions to act, defendant negligently caused the damage to plaintiff." In the "description of reasons for liability" section, plaintiffs stated: "Defendants, as Plaintiffs' attorneys, failed to use due care in the handling of <u>Pointe San Diego Residential Community, L.P. et al.</u> v. <u>Palomba Weingarten, et al.</u> litigation." (Italics omitted.)

---

[5] Because California and federal law are similar with respect to the relation-back doctrine, California courts look to federal decisions in applying the doctrine. (See *Austin, supra,* 56 Cal.2d at pp. 601–602; *Davaloo, supra,* 135 Cal.App.4th at pp. 416–417; see also *Santamarina v. Sears, Roebuck & Co.* (7th Cir. 2006) 466 F.3d 570, 573.)

■ Because there was a single litigation matter by that title in which Procopio had represented these three plaintiffs, Procopio was put on notice that the professional negligence claim was based on its representation of plaintiffs in this case, and of the need to gather and preserve evidence relating to this representation. When plaintiffs filed their initial complaint, Judge May had ruled against plaintiffs on several claims and Procopio was aware of these rulings. Procopio had represented these plaintiffs for several years in this precise litigation, controlled the litigation strategy, participated in numerous client conversations and meetings, and produced or had immediate access to the documents that would inevitably become relevant in the malpractice action. Although the original complaint did not detail *how* the firm had allegedly breached the standard of care, the form complaint and the fourth amended complaint rested on the same general set of facts (Procopio's prosecution of the Pointe I litigation), involved the same injury (monetary damages sustained as a result of alleged professional negligence), and referred to the same instrumentality (alleged professional negligence).

■ Further, as a fiduciary, Procopio had superior knowledge of the relevant facts and had full access to all of the information pertaining to the adequacy of its representation. Generally, under California's liberal pleading rules, "[l]ess particularity is required when it appears that defendant has superior knowledge of the facts, so long as the pleading gives notice of the issues sufficient to enable preparation of a defense." (*Okun v. Superior Court* (1981) 29 Cal.3d 442, 458 [175 Cal.Rptr. 157, 629 P.2d 1369]; see *Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 245 [74 Cal.Rptr. 398, 449 P.2d 462]; *Rannard v. Lockheed Aircraft Corp.* (1945) 26 Cal.2d 149, 157 [157 P.2d 1].) Based on the allegations of the pleading, Procopio was provided the necessary information to permit it to gather and preserve the relevant materials and begin to conduct discovery and prepare a defense to the claims that were later refined and augmented in the amended complaints.

Moreover, under rules applicable to legal malpractice cases, plaintiffs were required to file an action within one year after suffering damages, even if those damages were merely in the nature of attorney fees paid to a new attorney to take action to correct potential malpractice. (See *Jordache, supra,* 18 Cal.4th at p. 751.) In May 2003, plaintiffs terminated their relationship with Procopio and substituted Vivoli as their sole counsel. During the next year, plaintiffs and the Weingarten parties actively continued their adversarial litigation in the underlying matter, and Judge May continued to issue statements of decisions, rather than a final judgment. Thus, although the underlying dispute was actively proceeding in a parallel fashion, plaintiffs filed a protective complaint to guard against any claim that the statute had run because of their substitution of counsel. However, because the precise nature of the alleged malpractice and the injuries caused by the alleged malpractice

were not entirely clear to plaintiffs, plaintiffs pled their former attorneys' negligence in general terms in this initial complaint.

On this record, it would defeat this state's liberal pleading rules and statutory and judicial policies requiring prompt filing of malpractice complaints to hold the relation-back doctrine inapplicable here merely because plaintiffs' original complaint did not contain detailed allegations of the precise nature of the alleged legal malpractice. If Procopio had required additional information about the claim at that point, it could have filed a demurrer on the basis of uncertainty or engaged in discovery to seek information about the exact factual basis for the malpractice claim.

"The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." (*Santamarina v. Sears, Roebuck & Co., supra,* 466 F.3d at p. 573.) Based on the original complaint's specific reference to Procopio's alleged negligent handling of the Pointe I litigation and Procopio's role as plaintiffs' attorney during this litigation, the record supports our finding that Procopio had adequate notice to begin to prepare a defense, and could have reasonably foreseen the later allegations detailing the more specific acts of malpractice alleged in the later amended complaints.

In responding to the appeal, Procopio does not suggest it was unaware that the original malpractice complaint pertained to its representation of plaintiffs in the Pointe I litigation, or that the complaint gave it inadequate notice to permit it to preserve the relevant evidence and notify its malpractice carrier of the claim. Instead, it argues the trial court properly found the relation-back doctrine to be inapplicable based on *Davaloo, supra,* 135 Cal.App.4th 409. However, *Davaloo* is factually and legally distinguishable from the circumstances here.

In *Davaloo,* two plaintiffs filed identically worded complaints against State Farm, alleging breach of contract and bad faith causes of action relating to property damage from the Northridge earthquake. (*Davaloo, supra,* 135 Cal.App.4th at p. 412.) Plaintiffs filed these complaints on December 31, 2001, the last day of a "revival" statute, which gave insureds an extra year to file insurance claims related to the Northridge earthquake. (*Ibid.*) The complaints stated in general terms that the plaintiffs had " 'suffered insured losses as a result of the earthquake' " and had " 'timely' " contacted State Farm regarding damages. (*Ibid.*) Aside from the caption, the complaints did not mention the defendants or plaintiffs by name, and did not provide any information about the insurance policies or the claims being made by the plaintiffs. (*Ibid.*) The complaints were among at least 10 identically worded complaints filed on the same date by the same law firm. (*Id.* at p. 411, fn. 3.)

After State Farm challenged these pleadings and "long after the expiration of [the] revival period," each plaintiff filed an amended complaint, adding information about the identity of the plaintiff and defendant, the address of the property, the insurance policy number at issue, and various "generic [bad faith] allegations." (*Davaloo, supra*, 135 Cal.App.4th at pp. 411, 413.) The trial court sustained State Farm's demurrers, concluding the original complaints were " 'sham' " pleadings and therefore the first amended complaints did not " 'relate back and [were] time-barred.' " (*Id.* at p. 413.)

The *Davaloo* court agreed that the relation-back doctrine was inapplicable. (*Davaloo, supra*, 135 Cal.App.4th at pp. 416–420.) The court found that because the original complaint had a "complete lack of factual allegations," it was "impossible to conclude the first amended complaints are based on the same general set of facts as the original complaints." (*Id.* at p. 417.) The court explained that even when liberally construing the pleadings, "the body of each of the original complaints at bottom alleges nothing more than the Northridge earthquake caused harm to a resident or residents of Los Angeles County. Such an allegation falls far short of apprising State Farm of the factual basis of the claim. [Citations.]" (*Ibid.*)

The *Davaloo* court made clear that it was basing its holding on the "totality" of the circumstances and was not intending to establish a "bright-line rule as to when a complaint is so deficient to preclude relation back." (*Davaloo, supra*, 135 Cal.App.4th at p. 417.) The court also stressed that its decision to strictly enforce the statutory time limit was supported by the policy underlying the Northridge earthquake revival statute: "To allow an insured to file a complaint [on the last day of the] revival period lacking any factual allegations specific to the dispute with his or her insurer and then use the relation-back doctrine to make amendments to the wholly deficient complaint 'would contravene the Legislature's express directive that [the revival statute] operate to revive certain earthquake claims for a period of one year *only*." (*Id.* at p. 420, italics added.)

We fully agree with the holding and reasoning of *Davaloo* under the particular circumstances of the case. A primary purpose of the statute of limitations is to provide the defendant with sufficient notice to allow the defendant to gather and preserve evidence in a timely fashion. (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 102 [84 Cal.Rptr.3d 734, 194 P.3d 1026].) If an original complaint lacks facts sufficient to provide notice to the defendant of the essential nature of the claim, it would defeat this policy to permit the plaintiff to remedy this error by filing a new amended complaint beyond the limitations period. In *Davaloo*, State Farm could not have known what facts it needed to gather and preserve during the one-year limitations period. State Farm had *no* information about the insureds, their property, the claimed damages, the nature of their bad faith

claims, or any of the relevant conduct or activities undertaken by State Farm. (*Davaloo, supra*, 135 Cal.App.4th at pp. 416–419.)

This case is different. The complaint placed Procopio on notice of the identity of the plaintiffs and the nature of their claims. The complaint referred to the specific litigation in which Procopio had represented plaintiffs and alleged that Procopio had failed to use due care in the handling of that litigation. Although the complaint did not detail the specifics of the claim, Procopio had superior knowledge of its conduct and the manner in which it may have breached the standard of care. Procopio had sufficient information to be apprised of the factual basis for the claim—its acts and omissions during its representation of plaintiffs in the Pointe I litigation—and to take steps to preserve the necessary relevant information for defense of this claim and timely notify its malpractice carrier of the claim.

■ Procopio asserts that plaintiffs' malpractice claims could have pertained to many "different acts or omissions." However, the meaning of words in a complaint may not be considered in isolation and must be viewed in context of the entire pleading and the judicially noticed materials with the objective of ensuring "substantial justice between the parties." (§ 452.) Under the circumstances, a reasonable attorney would understand from the complaint (filed during the ongoing litigation and referring to the specific Pointe I case) that plaintiffs were suing Procopio for failing to maximize their recovery in the Pointe I litigation.

■ Procopio's reliance on decisions pertaining to the sufficiency of a pleading for purposes of a demurrer is unhelpful. (See *Berkley v. Dowds* (2007) 152 Cal.App.4th 518 [61 Cal.Rptr.3d 304]; *People ex rel. Dept. of Transportation v. Superior Court* (1992) 5 Cal.App.4th 1480 [7 Cal.Rptr. 2d 498].) The courts have long recognized that the fact that an original complaint contained pleading deficiencies does not preclude the application of the relation-back doctrine. (*Day v. Western Loan & Bldg. Co.* (1940) 42 Cal.App.2d 226, 231–232 [108 P.2d 702].) If "the original complaint defectively states a cause of action, it may be amended after the running of the statute [of limitations] [to add additional factual allegations] as long as the cause of action stated in the amended pleading can trace its descent from the original pleading." (*Ibid.*)

In this regard, we agree that the "bare bones" nature of plaintiffs' original complaint may not have withstood a demurrer on grounds of uncertainty. (See § 425.10, subd. (a)(1).) However, the applicability of the relation-back doctrine does not depend on whether Procopio would have prevailed on a challenge to the complaint on the basis of uncertainty. If Procopio had brought this challenge, the remedy would not have been a dismissal of the

complaint, but instead would have been an order providing plaintiffs the opportunity to amend the complaint to provide additional detail or further clarification. (See *Witczak v. Johnson* (1956) 146 Cal.App.2d 599, 605 [303 P.2d 1091].)

We also find Procopio's reliance on *Kim v. Regents of University of California* (2000) 80 Cal.App.4th 160 [95 Cal.Rptr.2d 10] to be misplaced. In *Kim*, the court held an employee's *wrongful termination claim* (age discrimination) did not relate back to a *contractual overtime pay claim* because the facts underlying the claims were logically separate and distinct. (*Id.* at pp. 168–169.) The court further found the plaintiff had engaged in actions leading the defendants to reasonably believe she had abandoned her wrongful termination claim. (*Id.* at p. 169.)

Unlike in *Kim*, the new detailed allegations in the third and fourth amended complaints were directly related to the original alleged facts. The difference between the original complaint and the fourth amended complaint is that plaintiffs added substantially more detail with respect to *how* defendants breached the standard of care and the nature of plaintiff's injuries (the loss of several claims based on the rulings of the Court of Appeal). Moreover, there are no similar facts here showing plaintiffs intended to abandon their malpractice claims.

*Coronet Manufacturing Co. v. Superior Court* (1979) 90 Cal.App.3d 342 [153 Cal.Rptr. 366] (*Coronet*), relied upon by Procopio, is also distinguishable. In *Coronet*, the original complaint alleged that the decedent was electrocuted while using a defective hair dryer and sued the manufacturer of the hair dryer; the amended complaint filed two years later identified the instrumentality as a lamp socket and switch and named, for the first time, the manufacturer of these items. (*Id.* at pp. 344–345.) The reviewing court held the relation-back doctrine inapplicable because the pleadings alleged different accidents and different instrumentalities. (*Id.* at p. 347.) The court explained: "The difference between being electrocuted by a hair dryer and being electrocuted by a table lamp is as great as being electrocuted by the hair dryer and being poisoned by some improperly processed food found on the kitchen shelf. Although they relate to a single death at a single location they are different 'accidents' and involve different instrumentalities."[6] (90 Cal.App.3d at p. 347.)

---

[6] After concluding that on the pleadings before it, the hair dryer was a different instrumentality than the table lamp, the *Coronet* court ordered that the plaintiffs be permitted to amend to allege facts showing the manufacturer of the light socket was in the chain of causation leading to the injury, which would trigger the relation-back doctrine. (*Coronet, supra*, 90 Cal.App.3d at pp. 347–348.)

Unlike *Coronet*, the allegations in the original and amended complaint relate to the same general set of facts, including the same general conduct and the same injury (failure to recover all of their damages in the underlying litigation). In *Coronet*, the alleged cause (instrumentality) of the injuries in the original and amended complaints was unrelated. (*Coronet, supra*, 90 Cal.App.3d at p. 347.) In this case, the alleged offending instrumentality was the same: Procopio's alleged negligence in representing plaintiffs in the Pointe I litigation.

The distinction is illustrated by the facts in *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217 [31 Cal.Rptr.2d 525] (*Foxborough*), in which the court found the relation-back theory inapplicable in a legal malpractice case. In that case, an attorney (Van Atta) represented the plaintiff in a transactional matter. (*Id.* at p. 222.) That representation ended in 1981. Several years later, the plaintiff was involved in litigation resulting, in part, from Van Atta's alleged negligent advice in the transactional matter. (*Id.* at pp. 223–224.) During the trial in this litigation, the plaintiff's new counsel retained Van Atta as a consultant and expert witness. (*Id.* at p. 223.) Several years later, the plaintiff brought an action against Van Atta, alleging the attorney failed to properly advise him on the transactional matter in 1979 and 1980. When the trial court found that claim untimely, the plaintiff sought to amend to add the allegations about plaintiff's work as a consultant and expert witness, and argued that the amendment was timely because it related back to the original filed complaint. (*Id.* at p. 230.)

The *Foxborough* court held the motion to amend was properly denied. (*Foxborough, supra*, 26 Cal.App.4th at pp. 230–231.) The court reasoned that the amendment did not relate back to the original complaint because two separate incidents were involved. (*Ibid.*) The original complaint alleged negligent transactional advice between 1978 and 1981, while the new cause of action alleged negligence in denying responsibility for the oversight and in the attorney's subsequent consultation and trial testimony. Because the latter was a separate incident that arose from a new contractual relationship between the parties, the amendment did not relate back and the new claims were barred by the statute of limitations. (*Ibid.*)

Here, unlike *Foxborough*, the amended pleadings are based on the same representation. Both the original complaint and the amended complaints claimed negligence in the handling of the Pointe I litigation. Thus, the amended allegations pertaining to specific acts of negligence occurring in Procopio's representation of plaintiffs in the Pointe I litigation related back to the original complaint's general allegation of negligence occurring in that same engagement.

## DISPOSITION

Judgment reversed. Respondents to pay appellants' costs on appeal.

Huffman, Acting P. J., and Nares, J., concurred.

Respondents' petition for review by the Supreme Court was denied July 20, 2011, S194056.