Filed 12/26/23  Brooks v. Diggs CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| MEHCAD BROOKS, | B322575 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV40105) |
| v. | |
| RODNEY DIGGS et al., | |
| Defendants and Respondents. | |

Appeal from order of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed.

Schneider & Branch, David K. Schneider; Williams Iagmin and Jon R. Williams for Plaintiff and Appellant.

Wood Smith Henning & Berman, Stephen M. Caine, Frances M. O'Meara and Holly M. Teel for Defendants and Respondents.

_____

In 2017, Mehcad Brooks (Brooks), an actor and writer, hired Rodney Diggs and his law firm, Ivie McNeill Wyatt Purcell & Diggs, A Professional Law Corporation (collectively, Diggs) to represent him in an arbitration against his former talent agency.

Brooks contends that Diggs performed negligently, including by failing to timely designate expert witnesses and by agreeing to incomplete exhibit and witness lists for use at the arbitration hearing. Brooks therefore fired Diggs, obtained a continuance of the scheduled November 2017 hearing date, and retained replacement counsel to represent him in the arbitration proceedings.

Notwithstanding the efforts of Brooks's replacement attorneys, the arbitrator ruled against Brooks in a June 3, 2019 award. The superior court confirmed the award on February 28, 2020.

Approximately eight months later, on October 20, 2020, Brooks filed a malpractice action against Diggs. Diggs moved for judgment on the pleadings under Code of Civil Procedure section 438,[1] arguing that Brooks's claims were untimely pursuant to section 340.6, subdivision (a). That subdivision establishes a one-year limitations period for malpractice claims, but also provides that such claims are tolled until a plaintiff has "sustained actual injury." (§ 340.6, subd. (a)(1).) Brooks opposed the motion on the ground that he did not sustain actual injury until the superior court

_____

[1] All subsequent statutory references are to the Code of Civil Procedure.

Section 438 provides, in relevant part, that a defendant may move for judgment on the pleadings on the ground that a plaintiff's complaint "does not state facts sufficient to constitute a cause of action against that defendant." (§ 438, subd. (c)(1)(B)(ii).)

2

issued the February 28, 2020 order confirming the arbitration award.

The trial court granted Diggs's motion, concluding that Brooks had "suffered actionable harm causing the statute of limitations to accrue when the arbitrator issued the award on June 3, 2019"—i.e., more than one year before Brooks filed his malpractice action. (Capitalization omitted.) The court then issued an order dismissing Brooks's complaint with prejudice.

Brooks now asks us to reverse the trial court's order dismissing his complaint, urging he did not sustain actual injury— and thus his claims did not accrue—until the superior court confirmed the arbitration award on February 28, 2020. Alternatively, he contends that even if he suffered actual injury on June 3, 2019, the date of the arbitrator's award, an emergency tolling rule adopted by the Judicial Council in response to the COVID-19 pandemic renders his complaint timely.

We conclude, however, that Brooks sustained actual injury no later than September 2018, when he incurred fees from his replacement attorneys in their efforts to correct or mitigate Diggs's alleged errors. (See *Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 275–276 (*Pointe San Diego*) ["a plaintiff sustains 'actual injury' when he or she incurs attorney fees to rectify the problem caused by the prior attorney's alleged negligence"].) Because Brooks's claims accrued more than one year before he filed his malpractice action against Diggs, his claims are untimely. We therefore affirm.

3

## FACTUAL SUMMARY AND PROCEDURAL HISTORY[2]

Brooks is an actor and writer. In the mid-2000s, he selected Innovative Artists Talent & Literary Agency, Inc. (Innovative) to represent him. Brooks contends that, as his agent, Innovative had a duty to use all reasonable efforts to procure employment for him as a writer.

In 2010, Brooks began developing an idea for a television project based on the Salem witch trials. He contends that he shared his idea with Innovative's president, who expressed interest in the project. Rather than aiding Brooks in developing and marketing his Salem project, however, Innovative allegedly encouraged another of its clients "to develop and pursue a Salem television project 'remarkably' and not so coincidentally similar to Brooks'[s] idea." The competing Salem project "was sold to FOX 21, ran for several seasons, and generated in excess of $1.5 million in revenue to [Innovative's other client]." Brooks discovered the competing Salem project shortly before the show's second season when he saw a billboard advertising the program using the phrase "witch among us"—a tagline Brooks contends he developed. (Capitalization omitted.)

In September 2016, Brooks filed a claim against Innovative in arbitration based on the agency's alleged wrongdoing in promoting

---

[2] We summarize here only the facts and procedural history relevant to our resolution of this appeal. We draw many of the facts in this summary from the allegations of Brooks's complaint. (See *Pointe San Diego*, *supra*, 195 Cal.App.4th at p. 269 ["[b]ecause [the court was] reviewing a judgment on the pleadings . . . , [it] base[d] [the] factual description on the allegations of the complaint and documents that were properly the subject of judicial notice"].) We express no view, however, concerning the veracity of the complaint's allegations.

4

the competing Salem project.  He asserted causes of action for breach of contract, breach of fiduciary duty, and fraudulent concealment and constructive fraud.

On April 28, 2017, approximately seven months after filing the arbitration claim, Brooks retained Diggs to represent him in the proceedings.  Brooks contends that Diggs "oftentimes was distracted by other pleasures in life," and that his "performance [therefore] fell well below the standard of care that one would expect an attorney to provide to his client."

Brooks alleges, for example, that Diggs "would sometimes be noticeably intoxicated" during case-related calls.  In addition, "Diggs'[s] [alleged] failure to timely and adequately retain and prepare expert witnesses—including a damage expert— led directly to their disqualification and exclusion during the arbitration."  (Capitalization omitted.)  Diggs also purportedly neglected to prepare Brooks himself adequately for deposition, "fail[ing] to meet with Brooks as promised," and instead "merely provid[ing] a general outline of how depositions work."  Finally, Diggs allegedly attempted to withdraw from the arbitration on the eve of the originally scheduled November 2017 hearing date in a manner suggesting that Diggs "believed that Brooks'[s] lawsuit against [Innovative] was without good cause."

Brooks contends further that "[d]espite filing a motion to withdraw, Diggs astoundingly failed to also request a continuance of the arbitration hearing" and related deadlines.  "Instead, Diggs brazenly . . . continued to act as Brooks'[s] counsel for the following two weeks, filing and agreeing with [Innovative] on witness lists, exhibit lists, and expert designations," and improperly excluding from the lists "experts that Brooks had previously named."

Soon thereafter, Brooks fired Diggs and obtained a continuance of the arbitration hearing to August 2018.  The

5

arbitrator ruled, however, "that because Diggs had already filed witness and exhibit[ ] lists, Brooks would be unable to amend those filings once he obtained new counsel." Brooks contends that "Diggs'[s] failure to immediately seek a continuance of the arbitration hearing and filing deadlines upon moving to withdraw [thus] put [him] at a disadvantage for the rest of the case as his new counsel was ultimately unable to rework or renegotiate the witness list and exhibit list."

The six-day arbitration hearing commenced on August 24, 2018, and concluded on September 29, 2018. On June 3, 2019, the arbitrator issued his award, ruling against Brooks and granting $170,550.97 in sanctions to Innovative based on the " 'unwarranted delays of Brooks and his previous counsel.' " (Boldface & capitalization omitted.) The superior court eliminated the sanctions imposed against Brooks, but otherwise confirmed the arbitrator's award in a February 28, 2020 order.

On October 20, 2020, Brooks filed a complaint against Diggs asserting causes of action for professional negligence, breach of fiduciary duty, and breach of contract. In response, Diggs moved for judgment on the pleadings on statute of limitations grounds.

The trial court granted the motion without leave to amend, explaining "[Brooks] suffered actionable harm causing the [one-year] statute of limitations to accrue when the arbitrator issued the award on June 3, 2019. [Brooks] did not file the complaint until over one year later, on October 20, 2020. As such, [Brooks's] legal malpractice claim is barred by the statute of limitations."[3]

---

[3] Brooks did not raise before the trial court any argument concerning the Judicial Council's COVID-19 emergency tolling rules.

(Capitalization omitted.) The court then issued an order dismissing Brooks's complaint with prejudice.

Brooks timely appealed.

## DISCUSSION

### A. *Standard of Review*

" ' "The standard of review for a motion for judgment on the pleadings is the same as that for a general demurrer: We treat the pleadings as admitting all of the material facts properly pleaded, but not any contentions, deductions or conclusions of fact or law contained therein. . . . We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any theory." ' [Citation.]" (*Tarin v. Lind* (2020) 47 Cal.App.5th 395, 403–404.)

### B. *Law Governing Limitations Period for Legal Malpractice Claims*

"The statute of limitations for legal malpractice actions is contained in . . . section 340.6, subdivision (a).[4] Under this

---

[4] Section 340.6, subdivision (a) provides, in relevant part: "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . . Except for a claim for which the plaintiff is required to establish the plaintiff's factual innocence, the time for commencement of legal action shall not exceed four years except that the period shall be tolled during the time that . . . the following exist[s]: [¶] (1) the plaintiff has not sustained actual injury." (§ 340.6, subd. (a)(1).)

7

statute, the one-year limitations period generally commences when the plaintiff actually or constructively discovers the facts of the wrongful act or omission . . . . [Citations.] However, this limitations period is tolled until the plaintiff suffers actual loss or damage resulting from the allegedly negligent actions." (*Pointe San Diego*, *supra*, 195 Cal.App.4th at p. 275.) "For purposes of the tolling rule, the 'test for actual injury under section 340.6 . . . is whether the plaintiff has sustained *any* damages compensable in an action.' " (*Pointe San Diego*, *supra*, at p. 275, quoting *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 751 (*Jordache*), italics added.)

The determination of actual injury does not "depend on facile, 'bright line' rules. [Citations.] Instead, the particular facts of each case must be examined in light of the wrongful act or omission the plaintiff alleges against the attorney." (*Jordache*, *supra*, 18 Cal.4th at p. 764.) In performing this inquiry, " 'the fact of damage, rather than the amount, is the critical factor.' [Citation.] Thus, a plaintiff sustains 'actual injury' when he or she incurs attorney fees to rectify the problem caused by the prior attorney's alleged negligence. [Citation.] Further, actual injury may occur even if the loss is contingent on an appeal or other final adjudication. [Citations.] The analysis 'concerns whether "events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages." [Citation.] However, once the plaintiff suffers actual harm, neither difficulty in proving damages nor uncertainty as to their amount tolls the limitations period.' [Citation.]" (*Pointe San Diego*, *supra,* 195 Cal.App.4th at pp. 275–276.)

"Although it is well settled that 'determining when actual injury occurred is predominantly a factual inquiry[,] [citations] [w]hen the material facts are undisputed, the trial court can resolve

the matter as a question of law.' " (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 111 (*Truong*).)

### C. *The Trial Court Properly Granted Judgment on the Pleadings in Favor of Diggs*

Brooks does not dispute he was contemporaneously aware of Diggs's alleged negligence in 2017, nearly three years before he filed his malpractice complaint. He nonetheless contends his claims are timely because he did not sustain actual injury within the meaning of section 340.6 until the superior court confirmed the arbitration award on February 28, 2020. Alternatively, he argues that even if he sustained actual injury at the time of the arbitrator's June 3, 2019 award, the tolling provided due to the COVID-19 pandemic under California Rules of Court, emergency rule 9 renders his claims timely.[5]

We agree with Diggs, however, that Brooks's claims are time-barred because the face of the complaint discloses that Brooks suffered actual injury no later than the conclusion of the arbitration hearing in September 2018. Brooks concedes that he incurred fees for replacement counsel's services at the time of the 2018 arbitration. He also acknowledges the many cases recognizing the established principle that fees incurred as a result of an attorney's effort to correct another attorney's alleged malpractice constitute actual injury for purposes of section 340.6. (See *Jordache*, *supra*, 18 Cal.4th at p. 751 ["attorney fees incurred as a direct result of another's tort are recoverable damages"]; *Callahan v. Gibson, Dunn*

---

[5] California Rules of Court, emergency rule 9 provides, in relevant part: "Notwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020." (Cal. Rules of Court, emergency rule 9(a).)

*& Crutcher LLP* (2011) 194 Cal.App.4th 557, 575 [plaintiffs "suffered actual injury when . . . [they] were required to incur attorney fees to respond to [a] claim" resulting from their former attorneys' alleged negligence]; *Pointe San Diego*, *supra*, 195 Cal.App.4th at pp. 275–276 ["a plaintiff sustains 'actual injury' when he or she incurs attorney fees to rectify the problem caused by the prior attorney's alleged negligence"]; *Truong*, *supra*, 181 Cal.App.4th at p. 114 ["[p]laintiffs first sustained actual injury when they were required to obtain and pay new counsel to file a lawsuit seeking to escape the consequences of . . . signing [a] lease and lease addendum, which were among the actual damages plaintiffs suffered as a result of [their former attorney's] alleged malpractice," capitalization omitted].)

Brooks contends, however, that these cases are distinguishable because they involve fees incurred "in litigation arising *because of the malpractice*." He urges that here, in contrast, he "elected to pursue arbitration proceedings against his former talent agency *well before Diggs had provided legal representation or committed any malpractice*." Thus, Brooks insists, "the meter was running on legal fees, *independent of any malpractice by Diggs*." Brooks argues further that, once the alleged malpractice occurred, he necessarily had to pay either Diggs or replacement counsel to correct or mitigate Diggs's errors. And because discovery might reveal that Diggs would have charged more than replacement counsel to do so, Brooks insists that we cannot determine at the pleading stage whether he suffered any injury as a result of retaining replacement counsel.

But in assessing actual injury, " 'the fact of damage, rather than the amount, is the critical factor.' " (*Pointe San Diego*, *supra*, 195 Cal.App.4th at p. 275.) " '[O]nce the plaintiff suffers actual harm, neither difficulty in proving damages nor uncertainty as to

their amount tolls the limitations period.' " (*Id.* at p. 276.) Here, the face of Brooks's complaint discloses that at least some portion of his replacement counsel's fees resulted from efforts to correct Diggs's alleged errors. Brooks alleges, for example, that replacement counsel "was ultimately unable to rework or renegotiate the witness list and exhibit list" for the arbitration hearing and "could not unring the proverbial bell Diggs had rung about his doubts in Brooks and the case." In addition, the complaint seeks as damages the entirety of the $323,000 charged by Brooks's replacement counsel in connection with the arbitration. The complaint thus alleges that Brooks incurred at least some of replacement counsel's fees only because of Diggs's alleged malpractice. We therefore are not persuaded by Brooks's attempts to distinguish the authorities on which Diggs relies.

Accordingly, we conclude that Brooks suffered actual injury no later than September 2018. Brooks therefore filed his October 2020 complaint outside the operative one-year limitations period, and the trial court properly granted judgment on the pleadings for Diggs.[6]

---

[6] Although the trial court reached its ruling through reasoning different from that we employ here, we affirm an order granting judgment on the pleadings if it "is correct upon any theory of law applicable to the case." (*Tukes v. Richard* (2022) 81 Cal.App.5th 1, 19.)

11

## DISPOSITION

The June 9, 2022 order is affirmed.  Respondents are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:



CHANEY, J.



WEINGART, J.