Filed 9/2/21  Wable v. Ciresi CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARCIA WABLE et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> KEVIN F. CIRESI, M.D. et al., <br><br> Defendants and Respondents. | F079286 <br><br> (Super. Ct. No. 16CECG03783) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Rosemary T. McGuire, Judge.

Stuart R. Chandler for Plaintiffs and Appellants.

Sheuerman, Martini, Tabari, Zenere & Garvin, James J. Zenere and Adam M. Stoddard, for Defendants and Respondents Kevin F. Ciresi, M.D., and Kevin F. Ciresi, M.D., Inc.

Low McKinley Baleria & Salenko, Nicholas J. Leonard, for Defendants and Respondents Athenix Physicians Group, Inc.

-ooOoo-

This case involves a single issue, that is, whether a first amended complaint filed by plaintiffs related back to the factual allegations in the initial complaint. The relation-back doctrine deems a later-filed amended complaint to have been filed at the time of an earlier complaint, which had met the applicable limitations period, thereby avoiding a statute of limitations bar. Here, the trial court found the first amended complaint did not relate back to the initial complaint and, in turn, that the action was barred by the applicable statute of limitations. We agree with the trial court's analysis and affirm.

### FACTS AND PROCEDURAL BACKGROUND

This case was initiated, in the Fresno County Superior Court, as a medical malpractice and loss of consortium action by a married couple, Marcia and George Wable (the Wables), against Dr. Kevin Ciresi (along with Kevin F. Ciresi, M.D., Inc.)[1] and Athenix Physicians Group, Inc. (dba Athenix Body Sculpting Institute).[2]

The Wables commenced the matter by serving, on August 26, 2016, a notice of intent pursuant to Code of Civil Procedure section 364 (subsequent statutory references are to the Code of Civil Procedure) on defendants. Section 364 provides, in relevant part: "No action based on [a] health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action." (§ 364, subd. (a).) Section 364 defines " 'professional negligence,' " in pertinent part, as "[a] negligent act or [an] omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed." (§ 364, subd. (f)(2).)

---

[1]     We will refer to the Ciresi defendants hereafter at Ciresi.

[2]     We will refer to the Athenix defendants hereafter as Athenix.

Thereafter, on November 22, 2016, the Wables filed their initial complaint against Ciresi and Athenix. The complaint provided background facts. Marcia Wable had undergone a "tummy tuck" procedure performed by Dr. Ciresi, on August 27, 2015, at Athenix Body Sculpting Institute. Dr. Ciresi also provided post-operative care to Marcia Wable at the Athenix facility. Athenix Body Sculpting Institute either employed or contracted with Dr. Ciresi to provide medical services at the Athenix facility. The complaint further indicated that the claims therein were medical malpractice/personal injury claims based on a negligence theory, for economic damages and general damages, including emotional distress and loss of consortium damages.

As for specific factual allegations, the complaint alleged that Ciresi and Athenix were "healthcare providers" who "provided medical care to Plaintiff, Marcia Wable[,] on or about August 27, 2015[,] and thereafter." In addition, the complaint alleged that on August 27, 2015, Marcia Wable "presented for a tummy tuck procedure" at the Athenix facility and "was provided negligent medical care on that date and succeeding dates by Defendants … who failed to properly/timely diagnose and treat [her]." The complaint further alleged: "As a result of the gross negligence of Defendants … Marcia Wable presented to the emergency room at Clovis Community Hospital for treatment for complications related to the tummy tuck, including a severe infection."

Regarding damages, the complaint alleged that "Marcia Wable has suffered and will suffer damages for personal injuries caused by the medical malpractice herein which include, but are not limited to[,] past and future medical expenses, loss of income, diminution of earning capacity, and other economic damages." The complaint added: "Marcia Wable also sustained past and future non-economic damages, which include physical pain, mental suffering, loss of enjoyment of life, physical impairment, inconvenience, disfigurement, grief, anxiety, humiliation and emotional distress as a result of her own injuries suffered because of the medical malpractice alleged herein."

3.

Finally, the complaint alleged that George Wable "has and will suffer loss of consortium damages as a result of defendants' negligence."

Well over a year after the complaint was filed, after discovery was conducted, the Ciresi and Athenix defendants filed, on August 8, 2018, their respective motions for summary judgment. The motions were heard on October 25, 2018. In an order after hearing dated November 2, 2018, the trial court granted Ciresi's motion for summary judgment but denied Athenix's motion for summary judgment.

Ciresi's motion for summary judgment was supported by an expert declaration from a plastic surgeon, Barry Press, M.D., who performs tummy tucks. In its order after hearing on the summary judgment motions, the trial court described Dr. Press's declaration as follows: "Dr. Press provides a detailed narrative of the course of treatment and medical care Marcia Wable received. [Citation.] He opines that the medical care and treatment provided to Marcia at all times satisfied the standard of care, and explains in detail how he reached this conclusion."

The Wables's opposition to the defendants' summary judgment motions was also supported by a declaration from a plastic surgeon, Norman Leaf, M.D., who performs tummy tucks. The trial court described Dr. Leaf's declaration as follows: "Plaintiff's expert declaration does not address the medical care provided by Dr. Ciresi, but instead addresses his bedside manner. Plaintiffs testified in their depositions that Dr. Ciresi appeared unsteady during the post-surgical care, during which he yelled at Marcia, held her down, ripped the tape off her wound, generally demeaned her and was bullying …. [B]ased on plaintiffs' deposition testimony, [Dr. Leaf opines] the post-surgical care provided by Dr. Ciresi fell below the standard of care." The trial court added: "Dr. Leaf concludes, after quoting large segments of plaintiffs' deposition testimony in his declaration, [¶] [that] '[i]t is [his] professional opinion that the post-operative care provided to Marcia Wable by Dr. Ciresi violated [the latter's] duty to provide care with compassion and respect for her dignity and rights. Holding her down and yelling, at her

4.

and her husband was substandard and below standards of professional care required of a physician providing said care."

The trial court noted that Dr. Leaf "relie[d] on ethical guidelines from the American Medical Association [AMA] that state, in pertinent part," that "[a] physician shall be dedicated to providing competent medical care, with compassion and respect for human dignity and rights." (Emphasis omitted.) The court continued: "[T]he foundation for Dr. Leaf's opinion comes from AMA's 'principles of medical ethics.' They are simply standards of conduct, not the standard of care …. The AMA (of which Dr. Leaf apparently isn't even a member) is a *voluntary professional association*. There is no showing in the opposition that the AMA's *standards of conduct* establish the *standard of care* for California physicians." (Italics added.)

Regarding Dr. Leaf's opinion, the trial court added:

> "The allegations of the Complaint do not encompass breach of these standards of professionalism [or bedside conduct]. The Complaint alleges, 'Marcia Wable was provided negligent medical care on [August 27, 2015] and succeeding dates by Defendants … who failed to properly/timely diagnose and treat Marcia Wable.' [Citation.] Addressing the harm suffered as a result of the negligence, the Complaint alleges, 'As a result of the gross negligence of Defendants … Marcia Wable presented to the emergency room at Clovis Community Hospital for treatment for complications related to the tummy tuck, including a severe infection.' [Citation.] This is the harm suffered as a result of the 'fail[ure] to properly/timely diagnose and treat Marcia Wable.' It does not encompass Dr. Ciresi's bedside manner, or breach of standards of professionalism. Plaintiff cannot survive summary judgment by raising triable issues as to issues not raised in the pleadings." (Emphasis omitted.)

The court granted Ciresi's motion for summary judgment. The court further ruled: "However, plaintiff[s] [are] granted 10 days' leave to file an amended complaint to conform to the proof as submitted in the declaration of Norman Leaf, M.D."

The Wables filed a first amended complaint (FAC) on November 13, 2018. References to the term "medical malpractice," which were present in the initial

5.

complaint, were excised in the FAC, which characterized the action as a personal injury action based on a general negligence theory. The paragraph in the original complaint describing the direct harm suffered by Marcia Wable—i.e., that Marcia Wable had "presented to the emergency room at Clovis Community Hospital for treatment for complications related to the tummy tuck, including a severe infection"—was removed in the FAC. Instead, the FAC added a new paragraph describing the direct harm suffered by Marcia Wable as severe emotional distress arising from Dr. Ciresi's rough handling and bullying behavior during post-operative treatment, including his disparagement of plaintiffs when they asked questions about Marcia Wable's condition. The FAC further alleged, in a departure from the original complaint, that George Wable suffered "severe emotional distress" as a result of witnessing Dr. Ciresi's behavior with Marcia Wable.

Specifically, the new paragraph added to the FAC provided:

"Defendant Dr. Ciresi, during his post-surgical treatment of Plaintiff Marcia Wable, in the presence of her husband, Plaintiff George Wable, negligently and/or intentionally caused severe emotional distress to Plaintiffs by conduct which included, but [was] not limited to, holding Marcia Wable down against her will, standing over her in a threatening and intimidating manner while screaming at her and her husband, Plaintiff George Wable; that he treated her roughly, including but not limited to, violently tearing off bandages over an open post-surgical wound, and routinely derogate[ing] each of them, when they asked any questions or expressed concerns about his post-surgical care and the course of Plaintiff Marcia Wable's post-surgical healing and recovery."

The FAC thus added new factual allegations of negligent and/or intentional behavior— including details of actions that were "threatening," "intimidating," violent, and bullying—that were not present in the original complaint. Finally, the FAC noted, just like the initial complaint, that "Marcia Wable and George Wable served their notice of intent to commence this action (CCP 364) on Defendants on August 26, 2016."

On December 12, 2018 and December 18, 2018, the Ciresi and Athenix defendants filed their respective demurrers to the FAC. The trial court issued a tentative

6.

ruling on March 1, 2019, sustaining both the demurrers without leave to amend. The court ruled that the FAC did not relate back to the initial complaint and, in turn, was barred by the applicable statute of limitations. The Wables requested oral argument, which took place on March 7, 2019. The court issued its final order after hearing on March 12, 2019, adopting its tentative ruling.

The Wables appeal from the trial court's final order after hearing, which sustained the demurrers of both the Ciresi and Athenix defendants, without giving the Wables a further opportunity to amend the complaint. The ultimate question on appeal is whether the allegations in the FAC relate back to the allegations in the initial complaint, thereby avoiding any statute of limitations bar.

## DISCUSSION

### I. Court Properly Found FAC Did Not Relate Back to Original Complaint

In sustaining the demurrers of all defendants without leave to amend, the trial court stated: "Here, the wrongful conduct alleged in the FAC is not within the scope of what was alleged in the original Complaint. That was why the court granted summary judgment in favor of Dr. Ciresi, but granted leave to amend." The Wables challenge the court's ruling, making two interrelated claims.

First, the Wables point out that the original complaint alleged that Marcia Wable was provided negligent medical care during the tummy tuck procedure and post-operatively, while Dr. Leaf opined "that the post-surgical care provided by Dr. Ciresi fell below the standard of care." They contend they did not need, in the first place, "to amend their complaint to include allegations in accordance with Dr. Leaf's declaration," given that the original complaint included "claims of mental suffering, humiliation and emotional distress as a result of defendants' negligence, which was broadly alleged to include defendants' care from the time of the surgery and thereafter."

Next, the Wables contend the trial court's ultimate ruling (after they filed the FAC), holding that the FAC did not relate back to the original complaint, was erroneous.

7.

As to the FAC, the trial court ruled:  "[T]he new allegations of the FAC do not rest on the same general set of facts, involve the same injury, or refer to the same instrumentality [as the allegations in the original complaint]."  The court further concluded:  "Accordingly, the FAC does not relate back to the filing of the original Complaint.  The FAC is barred by the statute of limitations."  The Wables contend "the [c]ourt erred in its analysis."  The Wables suggest, "[t]he statute of limitations does not act as a bar because the allegations of the [FAC] do indeed satisfy the criteria for relating back to the original complaint."

The trial court issued a detailed tentative decision, setting forth its reasoning in sustaining the defendants' demurrers without leave to amend.  The court thereafter adopted its tentative decision as its final order after hearing.  The question whether the allegations in an amended pleading relate back to the original pleading requires the application of a legal doctrine to undisputed facts, rather than the exercise of discretionary judgment by the trial court, and we therefore review the trial court's decision de novo.  (See e.g., *Brumley v. FDCC California, Inc*. (2007) 156 Cal.App.4th 312, 318.)  We agree with the trial court's reasoning and conclusions as reflected in its rulings.  Accordingly, we affirm the court's final order after hearing.

### A.    *Background*

The trial court's tentative decision sustaining the defendants' demurrers, subsequently adopted as its final order after hearing, provided, in pertinent part:

> "Code of Civil Procedure section 340.5 states that the limitations period in professional negligence actions against health care providers is 'three years after the date of injury, or one year after the plaintiff discovers, or through exercise of reasonable diligence should have discovered, the injury, whichever occurs first.'
>
> " 'Thus, regardless of extenuating circumstances, a patient must bring suit within one year after he discovers, or should have discovered[,] his 'injury.' (*Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 896.)

8.

"Without citing to any supporting authority, plaintiffs contend that this matter is to be judged by standards of general negligence, not medical malpractice. Plaintiffs contend that in ruling on the motion for summary judgment, the court allowed plaintiffs to proceed on tort claims outside of professional negligence. Plaintiffs contend that this issue has already been litigated and ruled on by this court, in plaintiffs' favor.

"That is not accurate. Plaintiffs' summary judgment opposition was premised on Dr. Ciresi's breach of standards of professionalism [or bedside conduct] established by the [AMA], in the course of providing medical care to Marcia. The court's [November 2, 2018] ruling did not make a distinction between claims premised on medical negligence and general negligence. [Citation.]

" '[W]hen a cause of action is asserted against a health care provider on a legal theory other than medical malpractice, the courts must determine whether it is nevertheless based on the "professional negligence" of the health care provider so as to trigger MICRA [the Medical Injury Compensation Reform Act].' (*Unruh-Haxton v. Regents of the University of California* (2008) 162 Cal.App.4th 343, 353.)

" 'Professional negligence' is defined as 'a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital.' (Civ. Code § 3333.1, subd. (c)(2).)

"Plaintiffs allege that defendants were healthcare providers, and that Marcia 'was seen as a patient … by defendants …' (FAC ¶ 1-2.) The wrongful acts by Dr. Ciresi alleged in the FAC occurred 'during his post-surgical treatment,' including 'tearing off bandages over an open post-surgical wound,' and when responding to questions/concerns about 'the course of Plaintiff Marcia Wable's post-surgical healing and recovery.' (FAC ¶ 6.)

"Clearly the alleged wrongful acts were done 'in the rendering of services for which the health care provider is licensed.' (Civ. Code § 3333.1, subd. (c)(2).) Negligent hiring and supervision of medical personnel also is considered professional negligence. (*So v. Shin* (2013) 212 Cal.App.4th 652, 668.) Thus, the MICRA legislation and statute of limitations applies here.

9.

"Again, the limitations period is three years from the date of injury, or one year after plaintiffs discovered the injury, whichever occurs first. (Code Civ. Proc. § 340.5.) It is apparent that the one year limitations period applies here. The FAC clearly alleges that plaintiffs were the direct objects of the alleged wrongful conduct of Dr. Ciresi, which caused physical pain for Marcia Wable, and serious emotional distress for both plaintiffs. Thus plaintiffs would have been aware of the injury as it occurred.

"The medical services began on 8/27/15. The FAC does not allege specifically when the post-surgical care (which forms the basis of the complaint) took place. However, it must have taken place sometime within the year after the tummy tuck, as plaintiffs allege that they served their notice of intent to commence this action on 8/26/16. Even if the acts forming the basis of the FAC took place at the end of that year, the claim would be time barred as the FAC was filed on 11/18/18.

"Additionally, even if the cause of action did not sound in professional negligence, and MICRA did not apply, the statute of limitations for general negligence is two years. (Code Civ. Proc. § 335.1.) The FAC was clearly filed more than two years after the alleged wrongful conduct.

"However, the original complaint was filed 11/22/16, and plaintiffs contend that the FAC relates back to the original complaint.

"The prevailing rule with respect to actions involving parties designated by their true names in the original complaint is that, if an amendment is sought after the statute of limitations has run, the amended complaint will be deemed filed as of the date of the original complaint provided recovery is sought in both pleadings on the same general set of facts. (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1199.)

"In *Massey v. Mercy Med. Ctr. Redding* (2009) 180 Cal.App.4th 690, 698, as to medical malpractice claims, the court stated,

"For an amended malpractice complaint to 'relate [b]ack' to the original complaint for statute of limitation purposes, the amended complaint 'must (1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original one.' (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 408-409, 87 Cal.Rptr.2d 453, 981 P.2d

10.

79; *Barrington v. AH. Robins Co*. (1985) 39 Cal.3d 146, 150-151, 216 Cal.Rptr. 405, 702 P.2d 563.)

"The court in *Massey* held that the plaintiff's claims in an amended complaint that a nurse 'was negligent because he administered morphine sulfate to plaintiff without a valid prescription and without informed consent, to cover up [a prior] fall' did not relate back to the claims in the original [c]omplaint that the nurse 'was negligent for leaving plaintiff unattended on his walker, causing plaintiff to fall.' (*Ibid*.)

"In *Coronet Manufacturing Co. v. Superior Court* (1979) 90 Cal.App.3d 342, the [c]ourt held that the relation back doctrine does not apply in a single death case when the amended complaint alleges a different accident [as the] cause [of] death and involves a different instrumentality.

"Here, the wrongful conduct alleged in the FAC is not within the scope of what was alleged in the original [c]omplaint. That was why the court granted summary judgment in favor of Dr. Ciresi, but granted leave to amend. The court explained [at the time]:

> "The allegations of the [c]omplaint do not encompass breach of [the AMA's] standards of professionalism [or bedside conduct]. The [c]omplaint alleges, 'Marcia Wable was provided negligent medical care on [August 27, 2015] and succeeding dates by Defendants, and each of them, who failed to properly/timely diagnose and treat Marcia Wable.' [Citation.] Addressing the harm suffered as a result of the negligence, the [c]omplaint alleges, 'As a result of the gross negligence of Defendants, and each one of them, Marcia Wable presented to the emergency room at Clovis Community Hospital for treatment for complications related to the tummy tuck, including a severe infection.' [Citation.] This is the harm suffered as a result of the 'fail[ure] to properly/timely diagnose and treat Marcia Wable.' It does not encompass Dr. Ciresi's bedside manner, or breach of standards of professionalism. Plaintiff cannot survive summary judgment by raising triable issues as to issues not raised in the pleadings.' (Citation.)

"Thus, the new allegations of the FAC do not rest on the same general set of facts, involve the same injury, or refer to the same instrumentality. Accordingly, the FAC does not relate back to the filing of the original [c]omplaint. The FAC is barred by the statute of limitations." (Emphasis omitted.)

11.

### B. *Analysis*

Preliminarily, we reject the Wables's contention that "[t]here was no need," in the first instance, "to require plaintiffs to amend their complaint to include allegations in accordance with Dr. Leaf's declaration." The Wables have not challenged the court's ruling granting Ciresi's summary judgment motion, whereby their claim that there was no need for them to amend their complaint is inappropriately raised and is not well taken.[3]

The Wables next contend that "[t]he statute of limitations does not act as a bar because the allegations of the [FAC] do indeed satisfy the criteria for relating back to the original complaint." This argument overlaps with the Wables's preliminary argument addressed above, as both arguments essentially boil down to the question whether the factual allegations in the original complaint can reasonably be seen as encompassing those in the FAC. The trial court answered this question in the negative and found the plaintiffs' anticipated amendments were ultimately futile.

As to the Wables's contentions regarding the FAC, we agree with the trial court. Specifically, we agree that "the new allegations of the FAC do not rest on the same general set of facts, involve the same injury, or refer to the same instrumentality [as the allegations in the original complaint]." We therefore affirm the trial court's conclusion

---

[3] In any event, as the trial court explained, the original complaint alleged a medical malpractice claim centered on negligent medical care provided to Marcia Wable by Dr. Ciresi, to the extent he failed to properly and timely diagnose and treat Marcia Wable in connection with her tummy tuck procedure, such that Marcia Wable had to go to the emergency room at Clovis Community Hospital on account of a severe infection and other complications of the tummy tuck surgery. Dr. Leaf's declaration, on the other hand, discussed Dr. Ciresi's unprofessional conduct to the extent he acted roughly and in a bullying manner during post-operative visits, by roughly handling Marcia Wable in examining her and failing properly to answer questions posed to him by both Marcia and George Wable. Accordingly, the court did not err in requiring the Wables to amend the complaint to incorporate factual allegations reflecting the substance of Dr. Leaf's declaration as to Dr. Ciresi's unprofessional conduct.

12.

that "the FAC does not relate back to the filing of the original Complaint" and is "barred by the statute of limitations." (See *Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 276 (*Pointe San Diego*) ["An amended complaint is considered a new action for purposes of the statute of limitations … if the claims do not 'relate back' to an earlier, timely filed complaint."].)

The Wables correctly summarized the applicable law in their opening brief, quoting *Pointe San Diego*, as follows:

> " 'Under the relation-back doctrine, an amendment relates back to the original complaint if the amendment: (1) rests on the same general set of facts; (2) involves the same injury; and (3) refers to the same instrumentality. [Citations.] An amended complaint relates back to an earlier complaint if it is based on the same general set of facts, even if the plaintiff alleges a different theory or new cause of action. [Citations.] However, the doctrine will not apply if "the plaintiff seeks by amendment to recover upon a set of facts entirely unrelated to those pleaded in the original complaint." (*Stockwell v. McAlvay* (1937) 10 Cal.2d 368, 375 …, [emphasis omitted].)

> " 'In determining whether the amended complaint alleges facts that are sufficiently similar to those alleged in the original complaint, the critical inquiry is whether the defendant had adequate notice of the claim based on the original pleading. "The policy behind statutes of limitations is to put defendants on notice of the need to defend against a claim in time to prepare a fair defense on the merits. This policy is satisfied when recovery under an amended complaint is sought on the same basic set of facts as the original pleading. [Citation.]" [Citations.] Additionally, in applying the relation-back analysis, courts should consider the "strong policy in this state that cases should be decided on their merits." [Citations.] [(*Pointe San Diego*, *supra*, 195 Cal.App.4th at pp. 276-277.)]' "

Here, the original complaint addressed negligence related to the tummy tuck procedure and subsequent treatment that culminated in a post-operative infection. The FAC reflected a new set of facts regarding Dr. Ciresi's inappropriate and negligent bedside manner, including roughness, rudeness, and bullying; new injuries, including

13.

fright and horror, arising from Dr. Ciresi's aforementioned roughness, rudeness, and bullying; and a new instrumentality of harm, that is, Dr. Ciresi's inappropriate bedside manner, including rough treatment, yelling and screaming, and failure to address the Wables's questions and concerns.

We agree with the trial court that the original complaint did not encompass the factual scenarios of Dr. Ciresi screaming at, and disparaging, the Wables, and being rough with Marcia Wable, during post-operative visits, thereby emotionally impacting the Wables in a direct fashion. The original complaint posited a scenario where Dr. Ciresi's negligent medical care in terms of his failure "to properly/timely diagnose and treat Marcia Wable," led to a negative physical outcome, including a severe infection, for Marcia Wable. The FAC, in contrast, posited a scenario where Dr. Ciresi's lack of professionalism or unprofessional conduct directly took an emotional toll on both plaintiffs. Given the disparity in the basic facts alleged in the complaint and FAC, respectively, the FAC did not relate back to the complaint. (See *Austin v. Massachusetts Bonding & Ins. Co.* (1961) 56 Cal.2d 596, 601 (*Austin*) ["The rule which makes relation back of an amendment dependent upon whether recovery is sought on the same general set of facts as those alleged in the original complaint is in accordance with the basic principle of code pleading that a litigant need only allege the facts warranting recovery."]; *Benfield v. Mocatta Metals Corp.* (2d Cir. 1994) 26 F.3d 19, 23 (for relation-back doctrine to apply, "there must be a sufficient commonality" of alleged acts of wrongdoing to preclude a claim of "unfair surprise"];[4] *Santamarina v. Sears, Roebuck & Co.* (7th Cir. 2006) 466 F.3d 570, 573 ["The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of plaintiff's

---

**4**     As California and federal law are similar with respect to the relation-back doctrine, California courts look to federal decisions in applying the doctrine. (See *Austin*, *supra*, 56 Cal.2d at pp. 601-602; *Davaloo v. State Farm Ins. Co.* (2005) 135 Cal.App.4th 409, 416-417.)

claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one."].)

The Wables argue, in their reply brief, that the factual allegations in the original complaint were not limited to medical malpractice that resulted in a negative physical outcome for Marcia Wable, including a severe infection that required emergency medical treatment. The Wables argue the reference to Marcia Wable requiring emergency treatment for severe infection simply signified a component of damages. However, this contention amounts to a strained interpretation of the original complaint and is not persuasive.

Finally, the Wables rely heavily on *Pointe San Diego*, *supra*, 195 Cal.App.4th 265, a legal malpractice case they did not cite to the trial court. In *Pointe San Diego*, the original legal malpractice complaint generally alleged that within the last year, " 'Defendants, as Plaintiffs' attorneys, failed to use due care' " in the handling of real estate litigation on behalf of the plaintiffs. (*Id*. at p. 271.) The *Pointe San Diego* court concluded that a subsequent amendment of the original legal malpractice complaint in the matter, related back to the original complaint, because the defendant law firm had adequate "notice that the professional negligence claim was based on its representation of plaintiffs in [a particular] case, and of the need to gather and preserve evidence relating to [that] representation." (*Id.* at p. 278.) In other words, the legal malpractice claim related to one particular representation, with which the defendant law firm was already well familiar. The court elaborated: "Although the original complaint did not detail *how* the firm had allegedly breached the standard of care, the form complaint and the … amended complaint rested on the same general set of facts [regarding a single litigation matter], involved the same injury (monetary damages sustained as a result of alleged professional negligence), and referred to the same instrumentality (alleged professional negligence)." (*Ibid*.)

15.

The Wables argue:  "Just as the plaintiffs in [*Pointe San Diego*] alleged in their original lawsuit generally that the defendant lawyers 'failed to use due care' in representing them, so plaintiffs in this case alleged that defendants provided 'negligent medical care.' "  The Wables add:  "The complaint alleged that defendants' conduct 'fell below the standard of care' as it related to treatment of Marcia Wable from the time of her tummy tuck procedure and thereafter."  The Wables continue:  "Just as the defendants in [*Pointe San Diego*] were put on notice that the claims being brought had to do with counsel's representation of those parties in certain litigation, so too were the defendants herein put on notice that plaintiffs' claims arose from the treatment of Marcia Wable as a patient."  Finally, the Wables contend that the FAC simply alleges "more specifics about the negligent medical care" provided by defendants.

The Wables's citation to *Pointe San Diego* is unavailing, as that case is factually distinguishable from the instant matter.  The *Pointe San Diego* court reasoned:  "[I]t would defeat this state's liberal pleading rules and statutory and judicial policies requiring prompt filing of malpractice complaints to hold the relation-back doctrine inapplicable here merely because plaintiffs' original complaint did not contain detailed allegations of the precise nature of the alleged legal malpractice."  (*Pointe San Diego*, *supra*, 195 Cal.App.4th at p. 279.)  In contrast to the situation in *Pointe San Diego*, here the original complaint outlined the factual scenario underlying the alleged malpractice at issue.  The original complaint specifically alleged that defendants "provided negligent medical care" in that they "failed to properly/timely diagnose and treat Marcia Wable," whereby "Marcia Wable presented to the emergency room at Clovis Community Hospital for treatment for complications related to the tummy tuck, including a severe infection."  In the FAC, these factual allegations were removed and replaced with new allegations regarding Dr. Ciresi's poor bedside manner in the course of providing post-operative care, including screaming at the Wables, violently tearing bandages off Marcia Wable's surgical wound, and disparaging the Wables when they asked him questions related to

16.

Marcia Wable's condition. *Pointe San Diego* addressed a very different situation and is, therefore, inapposite. Nor are the other authorities citied by the Wables persuasive on the present record.

In sum, the allegations in the FAC do not: (1) rest on the same general set of facts as reflected in the original complaint; (2) do not involve the same injury as the original complaint; and (3) do not refer to the same instrumentality of harm as the original complaint. Since the relation-back doctrine does not apply, the trial court properly sustained the defendants' demurrers.[5]

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs.

SMITH, J.

WE CONCUR:

HILL, P. J.

DETJEN, J.

---

[5] Plaintiffs do not contend the trial court should have granted further leave to amend.